

FILE COPY

Frank J. Rubino
Corporation Counsel for the City of Yonkers
40 South Broadway
City Hall, Room 300
Yonkers, New York 10701
By: Rory McCormick (RM 3994)
Associate Corporation Counsel

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JESSE O'BRIEN,

                              Plaintiff,                **NOTICE OF**
                                                            **MOTION**

   -against-

THE CITY OF YONKERS, DET. ANTHONY
CHIARELLA, Shield No. 601, Individually and in his       07 Civ. 3974 (LMS)(KMK)
Official Capacity, SGT. KEVIN SKULLY, Individually
and in his Official Capacity, DET. "JOHN" MCCABE,
Shield No. 663, Individually and in his Official Capacity,
and P.O.'s "JOHN DOE" # 1-10, Individually and in their
Official Capacities, (the name John Doe being fictitious as
the true names are presently unknown),

                              Defendants.
------------------------------------------------------------------X

SIRS:

      Please take notice that upon the Affirmation in Support and exhibits annexed thereto, and Memorandum of Law in Support of Defendants' Motion for Summary Judgment; the Defendants will move this Court before the Honorable Magistrate Lisa Margaret Smith at the United States Courthouse, 300 Quarropas Street, White Plains, New York for an Order pursuant to Rule 56 of the Federal Rules of Civil Procedure granting the Defendants' Motion for Summary Judgment in its entirety.

The Plaintiff shall set forth Opposition to this Motion by September 29, 2008 and the Defendants shall submit its Reply by October 10, 2008.

Dated: Yonkers, New York
August 22, 2008

>                    Yours, etc.,
>                    FRANK J. RUBINO
>                    Corporation Counsel
>                    Attorney for Defendant
>                    THE CITY OF YONKERS
>                    City Hall, Room 300
>                    Yonkers, New York 10701
>                    (914) 377-6256
>
> By:                *[signature]*
>                    Rory McCormick (RM 3994)
>                    Associate Corporation Counsel

TO: Jon L. Norninsberg
225 Broadway, Suite 2700
New York, New York 10007

Frank J. Rubino
Corporation Counsel for the City of Yonkers
40 South Broadway
City Hall, Room 300
Yonkers, New York 10701
By: Rory McCormick (RM 3994)
Associate Corporation Counsel

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JESSE O'BRIEN,

                              Plaintiff,        **STATEMENT PURSUANT TO LOCAL CIVIL RULE 56.1**

    -against-

THE CITY OF YONKERS, DET. ANTHONY
CHIARELLA, Shield No. 601, Individually and in his       07 Civ. 3974 (LMS)( KMK)
Official Capacity, SGT. KEVIN SKULLY, Individually
and in his Official Capacity, DET. "JOHN" MCCABE,
Shield No. 663, Individually and in his Official Capacity,
and P.O.'s "JOHN DOE" # 1-10, Individually and in their
Official Capacities, (the name John Doe being fictitious as
the true names are presently unknown),

                              Defendants.
------------------------------------------------------------------X

1. On November 13, 2005, at approximately 6:00 p.m. Joe Neal ("Neal") was robbed by an individual in front of 261 New Main Street in Yonkers, New York. (See, Exhibit "D"). Prior to the robbery Neal had just gotten off the bus at the intersection of New Main Street and Nepperhan Avenue and walked south on New Main Street. (See, Exhibit "D"). Neal saw a light skinned Hispanic male walking towards him on the same side of the street. (See, Exhibit "D"). Neal was able to get a clear look at this person's face as he walked towards him and felt that the guy was looking at him in a threatening manner. (See, Exhibit "C", pages 81-85, 180-181). Neal then crossed the street in order to avoid

this person. (See, Exhibit "D") Neal did not see anyone else on the street. (See, Exhibit "D"). It was dusk and the street was illuminated by street lights. (See, Exhibit "CC", page 106).

2. Neal was accosted from behind moments after crossing the street. (See, Exhibit "D"). The suspect grabbed Neal in a choke hold and told Neal to "give me your fucking cash" (See, Exhibit "D"). Neal took money from his wallet and reached over his shoulder to hand it to the assailant. (See, Exhibit "CC", page 181). Neal was able to get a second look at the suspect's face when he handed him the money. (See, Exhibit "CC", page 181). Neal was stabbed twice in the left thigh with an unknown object as soon as he handed money to the assailant. (See, Exhibit "D"). The assailant then forced Neal to the ground causing a cut to Neal's scalp. (See, Exhibit "D"). Neal saw the suspect run in the direction of School Street (See, Exhibit "D"). Neal sought medical treatment at St. Joseph's Hospital which was within walking distance. (See, Exhibit "D"). Neal received seven (7) stitches to his scalp and three (3) stitches to his thigh. (See, Exhibit "D", "J").

3. P.O. David Rodriguez and his partner P.O. Capuano responded to the scene after receiving a radio report of a robbery. (See, Exhibit "A"). Officer Rodriguez spoke to Jorge Tovar and Alejandro Mendoza who both saw the incident but did not get a good view of the suspect. (See, Exhibit "A", "II", page 10, "Y", pages 48-49, 54 "KK" page 46). Tovar stated that the suspect was a Hispanic male approximately 5'8" weighing 160 lbs., goatee, wearing a gray hooded sweat shirt. (See, Exhibit "A", "JJ", pages 58-59). Tovar and Mendoza advised the officers that the suspect fled toward School Street and that the victim walked in the direction of St. Joseph's Hospital. (See, Exhibit "A"). Officer Rodriguez responded to St. Joseph's Hospital and spoke briefly to Neal in the

emergency room (See, Exhibit "II", page 26). Officer Rodriquez observed that Neal appeared "distraught" and "highly agitated" as the hospital staff was treating him for his injuries. (See, Exhibsit "II", pages 26, 44). Neal told P.O. Rodriguez that the suspect was in his early 20's, Hispanic, about 5'7" wearing a gray hooded sweatshirt with a goatee. (See, Exhibit "II", page 10).

4. Officer Rodriguez notified the Detective Division of the robbery while at St. Joseph's Hospital in order to permit detectives to conduct an investigation. (See, Exhibit "A"). Detective Chiarella and his partner, Detective Barbato responded to St. Joseph's Hospital and interviewed Neal in the emergency room. (See, Exhibit "Y", pages 9-10). Officer Rodriguez subsequently prepared a incident report noting that Neal as well as Tovar and Mendoza may be able to identify the suspect. (See, Exhibit "A").

5. Detective Chiarella took notes during his interview with Neal in the emergency room. (See, Exhibit "C"). Neal told Detective Chiarella that the suspect was a Hispanic male about 5'7" with a goatee wearing a black bubble jacket with his head covered by a hood. (See, Exhibit "C"). Additionally, Neal told Detective Chiarella that he saw the suspect's face and that if he saw him again "he would remember the face" (See, Exhibit "C"). Detective Chiarella indicated in his notes that Neal "may/may not be able to identify" the suspect noting that Neal was "shaken tonight". (See, Exhibit "C"). Detective Chiarella provided Neal with his phone number and asked Neal to call him at the Detective Division at a later date. (See, Exhibit "C").

6. On November 18, 2005, five (5) days after being robbed on New Main Street, Neal saw the person who robbed him at St. Joseph's Hospital. (See, Exhibit "D"). Neal was employed as a Unit Manager of the Operating Room ("OR") at St. Joseph's Hospital

(See, Exhibit "B"). Neal was in the cafeteria when he saw the person who robbed him. (See, Exhibit "D"). Neal and his assailant were both approaching the cashier with their food. When the assailant saw Neal, he immediately attempted to hide behind a napkin dispenser (See, Exhibit "D", "J"). Neal was upset and immediately notified his supervisor of what occurred. Neal's supervisor advised him that the suspect was probably not a hospital employee but rather one of several dozen people who are afforded the opportunity to eat at the hospital. (See, Exhibit "D"). Neal was upset and left work early. (See, Exhibit "D").

7. Neal observed the person who robbed him a second time at St. Joseph's Hospital three or four days later on either November 21st or 22nd at approximately 8:00 a.m. once again while in the cafeteria. (See, Exhibit "D"). After making eye contact with this individual, Neal saw him walk away from his tray of food. (See, Exhibit "D"). Neal contacted Hospital Security immediately after this incident. (See, Exhibit "D"). Neal did not contact the Yonkers Police Department at this time because he was fearful of being retaliated against in the event the suspect was not apprehended. Neal wanted to find out who the suspect was and why that person was present at his place of work. (See, Exhibit "CC", pages 172-174).

8. On November 23, 2005, Neal saw the assailant a third and final time at St. Joseph's Hospital. Neal saw this person come into the O.R. between 9:00 a.m. and 11:00 a.m. (See, Exhibit "D"). This individual recognized Neal and quickly left the O.R. to avoid contact with Neal. (See, Exhibit "D"). Neal learned from members of the O.R. staff that this individual's name was Jesse O'Brien and that O'Brien was an employee at St.

Joseph's Hospital. (See, Exhibit "D"). O'Brien worked in the Maintenance Department of the hospital. (See, Exhibit "B").

9. On November 25, 2005, the day after Thanksgiving, Neal met with Nicole Beckford, the Director of Human Resources at St. Joseph's Hospital. (See, Exhibit "S"). Neal told Beckford that he was sure that Jesse O'Brien, who he learned was an employee of the hospital, was the person who robbed him on November 13, 2005. (See, Exhibit "S"). Thereafter, a supervisor in the St. Joseph's ER called the Yonkers Police Department to meet with him concerning an employee responsible for a prior stabbing. (See, Exhibit "Q", "B").

10. Detectives Jim McCabe and Kevin Scully responded to the hospital at approximately 10:30 a.m. and spoke to Neal in the Human Resource Office of Nicole Beckford. (See, Exhibit "B"). Neal informed the Detectives that the suspect's name was Jesse O'Brien, and that he learned O'Brien was an employee of St. Joseph's Hospital. (See, Exhibit "B").

11. Neal subsequently accompanied the Detectives to the Detective Division where Detective Scully took a written statement from Neal in which Neal related the circumstances of the robbery as well as his three (3) subsequent sightings of O'Brien at the hospital. (See, Exhibit "B"). Neal provided a description of his attacker to Detective Scully as being a short Hispanic male approximately 5'6" tall with a light complexion. (See, Exhibit "B"). The suspect was either bald or kept his hair close shaven. Additionally, Neal told Detective Scully that the suspect had a black goatee and a mark under his right eye that was either a mole or a light tattoo. Neal also recalled that the suspect's hands were small and boney. (See, Exhibit "B").

12. Detective McCabe prepared a six picture photo array while Neal was being interviewed by Detective Scully in order to provide Neal with an opportunity to identify his assailant. (See, Exhibit "AA", pages 41-42, "F"). Neal immediately identified the person positioned in photo number 2, who was Jesse O'Brien, as the person who robbed him twelve (12) days earlier. (See, Exhibit "B").

13. Detectives McCabe and Scully met O'Brien in the E.R. after they spoke to Neal and Ms. Beckford. (See, Exhibit "AA", pages 17-20). Neal and O'Brien were kept separated by the Detectives. (See, Exhibit "CC" pages 177-178). O'Brien accompanied the Detectives to the Yonkers Police station where he was advised of the event that took place. The Detectives wanted to hear O'Brien's side of the story and whether he had an alibi. (See, Exhibit "AA" pages 17-18, "Z", pages 27-29). Detective McCabe Mirandized O'Brien at police headquarters. (See, Exhibit "B", "E"). O'Brien informed Detective McCabe that he did not wish to make any statements until speaking with an attorney. (See, Exhibit "B"). All conversations with O'Brien ended. The Detectives learned from Neal that a police report was taken the day of the incident. Detective McCabe reviewed Officer Rodriguez's incident report at the Detective Division prior to arresting O'Brien. (See, Exhibit "AA", pages 35, 51-52). O'Brien was transported to Central Booking where he was booked for Robbery in the First Degree, twelve (12) days after the robbery was committed. (See, Exhibit "B").

14. The following day on November 26, 2005, Detective McCabe signed the Felony Complaint charging O'Brien with Robbery in the First Degree. (See, Exhibit "G"). The Felony Complaint together with the Crime Report was filed with the Westchester County District Attorney's Office. (See, Exhibit "I").

15. Detectives Scully and McCabe interviewed the two witnesses, Tovar and Mendoza within days of O'Brien's arrest. (See, Exhibit "Z", pages 50-51). Neither witness provided any meaningful information concerning the suspects identity so no reports were generated. ( See, Exhibit "Z" pages 50-57, Exhibit "AA" pages 31-32, "KK" page 46). Mendoza was uncooperative. (See, Exhibit "Z" pages 57-58). Mendoza made it clear to Detective Scully that he had no information to give, and did not want to get involved. (See, Exhibit "Z" page 57).

16. On November 29, 2005, four (4) days after O'Brien was arrested, Detective Chiarella prepared a monthly status case report. (See, Exhibit "H"). This is an administrative report filled out by detectives in connection with their open, pending cases. ( See, Exhibit "Y", pages 17-18). Detective Chiarella was unaware that an arrest was made in connection with the robbery of Neal four days earlier at the time he wrote his monthly status report. ( See, Exhibit ""Y" pages 17-18). Detective Chiarella wrote in his report that his recommendation was that the case be considered inactive due to Neal's lack of cooperation in coming to the Detective Division to view photos. (See, Exhibit "H"). When Detective Scully interviewed Neal on November 25, 2005, he became aware that there was apparently a bad rapport between Neal and Detective Chiarella. ( See, Exhibit "Z" pages 84-86).

17. In approximately January of 2006, Detective Chiarella became aware of O'Brien's arrest. (See, Exhibit "Y" pages 18-19). Detective Chiarella notified his supervisor, Sergeant Rinaldi of the situation. (See, Exhibit "Y" pages 30-31). Thereafter it was determined that Detective Chiarella would be the lead detective assigned to the case. (See, Exhibit "Y" page 46).

18. On December 21, 2005, a Felony Hearing was conducted in Yonkers City Court before the Honorable Robert C. Cerrato. (See, Exhibit "K"). Neal was the only witness who testified at the Felony Hearing. (See, Exhibit "K"). Neal identified O'Brien in court as the individual who robbed him on New Main Street on November 13, 2005. ( See, Exhibit "K" pages 7-8). Judge Cerrato held O'Brien and referred the matter to the Grand Jury at the conclusion of the hearing.

19. On January 26, 2006, the Westchester District Attorney's Office presented this case to the Grand Jury. (See, Exhibit "L"). Neal and Detective Chiarella testified at the Grand Jury proceeding. (See, Exhibit "L"). The Grand Jury returned a true bill against O'Brien.

20. On May 16, 2006, the Honorable Lester Adler issued a DECISION and ORDER ruling that the "Grand Jury was properly instructed and the evidence presented, if accepted as true, would be legally sufficient to establish every element of the offenses charged". (See, Exhibit "W").

21. On March 3, 2006, Judge Adler granted the District Attorney's motion and ordered that a lineup be conducted. (See, Exhibit "V"). Thereafter, on March 22, 2006, a lineup was conducted at Yonkers Police Department headquarters. Present at the lineup were O'Brien's criminal defense attorney, Richard Candee, Assistant District Attorney Yvonne Morales and Detective Chiarella. ( See, Exhibit "M"). The lineup was photographed pursuant to Court Order. (See, Exhibit "N"). All of the individuals in the lineup wore a small band-aid under their right eye so that O'Brien's small mole or tattoo would not stand out. (See, Exhibit "N"). O'Brien chose to be in position three (3) in the lineup. (See, Exhibit "M"). Neal identified O'Brien at the lineup with respect to the incident that

occurred on November 13, 2005 at 6:09 p.m. in the vicinity of 261 New Main Street in Yonkers. (See, Exhibit "M", "P").

22. A couple of hours after the lineup was completed, Jorge David Tovar provided a written statement to Detective Chiarella at approximately 5:30 p.m. on March 22, 2006. (See, Exhibit "R"). Tovar was not present at the lineup. (See, Exhibit "Y" pages 63-64). The District Attorney's Office did not seek to have Tovar attempt to identify O'Brien at the lineup due to the fact that Tovar was unable to positively identify Neal's attacker because of his brief, cursory view of the suspect. (See, Exhibit "Y", pages 63-64, "KK" page 46). Tovar told Detective Chiarella that the suspect ran past him with a hood on his head and that he looked at the suspect for "a couple of seconds." (See, Exhibit "R").

23. A Wade Hearing was conducted before Judge Adler on August 21, 2006 relative to the legal sufficiency of Neal's photographic array identification of O'Brien on November 25, 2005 as well as Neal's lineup identification on March 22, 2006. (See, Exhibit "X"). The Court ruled that the photo array shown to Neal was not unduly suggestive. "All of the individuals depicted in the array are similar enough to Defendant in age and general appearance that there is little likelihood that he would be singled out for identification based on particular characteristics." (See, Exhibit "X").
With respect to the lineup identification, the Court noted that the "fillers included persons who possessed reasonably similar physical characteristics, and the Defendant was allowed to select his own position in the lineup. (See, Exhibit "X"). The Court denied O'Brien's motion to suppress the photographic array, the lineup and the prospective identification testimony of Neal. (See, Exhibit "X").

24. On August 22, 2006, O'Brien's criminal trial commenced before Judge Adler. On August 30, 2006, the jury returned a verdict acquitting O'Brien of all charges ( See, Exhibit "V"). O'Brien was incarcerated for approximately nine (9) months before his acquittal. (See, Exhibit "GG").

25. On or about June 11, 2007, a Summons in a Civil Case, and a Complaint naming the City of Yonkers, Detective Anthony Chiarella, Detective "John" McCabe and Officers John Doe was caused to be served by Plaintiff. (See, Exhibit "EE"). On or about June 28, 2007, the Defendants served an Answer. (See, Exhibit "FF"). On or about June 9, 2008, Plaintiff served an Amended Summons in a Civil case and an Amended Complaint, naming Sergeant Kevin Scully, as well as the City of Yonkers, Detective Anthony Chiarella and Detective "John" McCabe as defendants. (See, Exhibit "GG"). On or about June 17, 2008, an Amended Answer was served. (See, Exhibit "HH"). Discovery has concluded and Defendants submit the instant motion.

Dated: Yonkers, New York
       August 21, 2008

                      Frank J. Rubino
                      Corporation Counsel for the City of Yonkers
                      40 South Broadway
                      City Hall, Room 300
                      Yonkers, New York 10701

                      By: _____
                      Rory McCormick
                      Associate Corporation Counsel

Frank J. Rubino
Corporation Counsel for the City of Yonkers
40 South Broadway
City Hall, Room 300
Yonkers, New York 10701
By: Rory McCormick (RM 3994)
Associate Corporation Counsel

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JESSE O'BRIEN,

                                                      Plaintiff,        **AFFIRMATION IN SUPPORT**

-against-

THE CITY OF YONKERS, DET. ANTHONY
CHIARELLA, Shield No. 601, Individually and in his        07 Civ. 3974 (LMS)(KMK)
Official Capacity, SGT. KEVIN SKULLY, Individually
and in his Official Capacity, DET. "JOHN" MCCABE,
Shield No. 663, Individually and in his Official Capacity,
and P.O.'s "JOHN DOE" # 1-10, Individually and in their
Official Capacities, (the name John Doe being fictitious as
the true names are presently unknown),

                                                   Defendants.
------------------------------------------------------------------X

      RORY McCORMICK, hereby affirms the following:

      I am an Associate Corporation Counsel for the City of Yonkers attorney for the above named Defendants and I hereby submit this Affirmation in Support of Defendants' motion for summary judgment pursuant to Federal Rules of Civil Procedure 56(c):

      1. Attached hereto as Exhibit "A" is a copy of YPD-1 by P.O. Rodriguez dated November 13, 2005.

      2. Attached hereto as Exhibit "B" is a copy of YPD-3 by Detective Scully dated November 25, 2005.

3. Attached hereto as Exhibit "C" is a copy of Detective Chiarella's notes from his interview with Neal on November 13, 2005.

4. Attached hereto as Exhibit "D" is a copy of the Statement of Joe Neal dated November 25, 2005.

5. Attached hereto as Exhibit "E" is a copy of Plaintiff's executed Miranda Rights Card.

6. Attached hereto as Exhibit "F" is a copy of the YPD Photo Display Folder.

7. Attached hereto as Exhibit "G" is a copy of the Felony Complaint dated November 26, 2005 by Detective McCabe.

8. Attached hereto as Exhibit "H" is a copy of Detective Chiarella's YPD-3 dated November 29, 2005.

9. Attached hereto as Exhibit "I" is a copy of the District Attorney's Crime Report prepared by Detective McCabe on November 26, 2005.

10. Attached hereto as Exhibit "J" is a copy of YPD Photos depicting Neal's injury, the crime scene, various areas of St. Joseph's Hospital and Plaintiff.

11. Attached hereto as Exhibit "K" is a copy of the Felony Hearing Transcript dated December 21, 2005.

12. Attached hereto as Exhibit "L" is a copy of the Grand Jury Transcript dated January 26, 2006.

13. Attached hereto as Exhibit "M" is a copy of the Lineup Transcript dated March 22, 2006.

14. Attached hereto as Exhibit "N" is a copy of YPD Lineup Photographs.

15. Attached hereto as Exhibit "O" is a copy of P.O. Howard's report regarding photos of lineup dated March 22, 2006.

16. Attached hereto as Exhibit "P" is a copy of Detective Chiarella's report dated March 22, 2006 regarding the lineup.

17. Attached hereto as Exhibit "Q" is a copy of the YPD Radio Logs for November 13, 2005 and November 25, 2005 for the subject incident.

18. Attached hereto as Exhibit "R" is a copy of the Statement of Jorge David Tovar dated March 22, 2006.

19. Attached hereto as Exhibit "S" is a copy of the incident report prepared by Nicole Beckford dated November 25, 2005.

20. Attached hereto as Exhibit "T" is a copy of P.O. Rodriguez's Memo Book entry for November 13, 2005.

21. Attached hereto as Exhibit "U" is a copy of the criminal trial Verdict Sheet before the Honorable Lester B. Adler as well as the Sealing Order.

22. Attached hereto as Exhibit "V" is a copy of the Decision and Order of Judge Adler dated March 3, 2006 ordering a lineup.

23. Attached hereto as Exhibit "W" is a copy of the Decision and Order of Judge Adler dated May 16, 2006 denying defendant's motion to dismiss the indictment.

24. Attached hereto as Exhibit "X" is a copy of Judge Adler's Decision on the Wade Hearing dated August 22, 2006.

25. Attached hereto as Exhibit "Y" is a copy of Detective Chiarella's examination before trial.

26. Attached hereto as Exhibit "Z" is a copy of Detective Scully's examination before trial.

27. Attached hereto as Exhibit "AA" is a copy of Detective McCabe's examination before trial.

28. Attached hereto as Exhibit "BB" is a copy of the transcript of Plaintiff's criminal trial testimony.

29. Attached hereto as Exhibit "CC" is a copy of the transcript of Joe Neal's criminal trial testimony.

30. Attached hereto as Exhibit "DD" is a copy of the transcript of Detective Scully's criminal trial testimony.

31. Attached hereto as Exhibit "EE" is a copy of the Summons and Complaint dated on or about May 22, 20007.

32. Attached hereto as Exhibit "FF" is a copy of the Answer dated on or about June 28, 2007.

33. Attached hereto as Exhibit "GG" is a copy of the Amended Complaint dated on or about June 3, 2008.

34. Attached hereto as Exhibit "HH" is a copy of the Amended Answer dated on or about June 17, 2008.

35. Attached hereto as Exhibit "II" is a copy of Police Officer Rodriguez's examination before trial.

36. Attached hereto as Exhibit "JJ" is a copy of the transcript of Police Officer Rodriguez's criminal trial testimony.

37. Attached hereto as Exhibit "KK" is a copy of the transcript of Jorge Tovar's criminal trial testimony.

Dated: Yonkers, New York
August 22, 2008

                            Yours, etc.,
                            FRANK J. RUBINO
                            Corporation Counsel
                            Attorney for Defendant
                            THE CITY OF YONKERS
                            City Hall, Room 300
                            Yonkers, New York 10701
                            (914) 377-6256

By: _____
           Rory McCormick (RM 3994)
           Associate Corporation Counsel

TO: Jon L. Norninsberg
      225 Broadway, Suite 2700
      New York, New York 10007