UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSE O'BRIEN,

                          Plaintiff,

        - against -

THE CITY OF YONKERS, DET. ANTHONY
CHIARELLA, Sheild No. 601, Individually and in his
Official Capacity, SGT. KEVIN SKULLY,
Individually and his Official Capacity, DET. "JOHN"
MCCABE, Shield No. 633, Individually and in his
Official Capacity, and P.O.s "JOHN DOE" #1-10,
Individually and in their Official Capacities,

                          Defendants.

07 Civ. 3974 (KMK) (LMS)

*__CORRECTED__*
*__REPORT AND__*
*__RECOMMENDATION__* [1]

TO:   THE HONORABLE KENNETH M. KARAS,
      UNITED STATES DISTRICT JUDGE

        Defendants Detective Anthony Chiarella, Sergeant Kevin Skully, and Detective John

McCabe (herein, "Defendants") have filed a motion for summary judgment pursuant to FED. R.

CIV. P. 56 seeking complete dismissal of Plaintiff Jesse O'Brien's (herein, "Plaintiff") Amended

Complaint, which raises Fourth Amendment common law tort claims under 42 U.S.C. §1983.

See Docket #25, Defendants' Notice of Motion for Summary Judgment; Docket #16, Plaintiff's

Amended Complaint (herein, "Am. Comp."). [2]  Plaintiff asserts claims sounding in false arrest,

---

        [1] This corrected Report and Recommendation is being filed after several typographical
errors were noticed upon subsequent review; the recommended disposition of Defendants'
motion, however, remains unchanged.

        [2] In his Opposition to Defendants' motion for summary judgment, Plaintiff relinquished
his municipal liability claims with prejudice against the City of Yonkers and the individual
Defendants sued in their official capacities under Monell v. New York City Dep't of Social
Servs., 436 U.S. 658 (1978).  See Docket #34, Plaintiff's Memorandum of Law in Opposition

malicious prosecution, and abuse of criminal process based upon his arrest, prosecution, and

subsequent acquittal on charges that he committed robbery in the first degree.  <u>See</u> Am. Comp. at

¶¶33, 43, 47-52, 55-57.  Defendants argue in the instant motion that each of the Plaintiff's claims

fail as a matter of law because there was probable cause to arrest and to prosecute Plaintiff and

because Plaintiff cannot present genuine issues of material fact requiring trial on any of his

causes of action.  <u>See</u> Docket #23, Defendants' Memorandum of Law in Support of Summary

Judgment (herein, "Defs' Mem.").

     For the following reasons I conclude, and respectfully recommend that Your Honor

conclude, that Plaintiff's claims fail as a matter of law, that Defendants' motion for summary

judgment should be granted, and that Plaintiff's Amended Complaint should be dismissed.

## BACKGROUND

A.    <u>Facts</u>

     The following facts are drawn from the parties' Local Rule 56.1 Statements, are

undisputed unless otherwise noted, and are presumed to be true for the purposes of this motion.

The following facts are construed in the light most favorable to the nonmoving party and all

permissible inferences are drawn in favor of the nonmoving party.  <u>See</u> <u>Mount Vernon Fire Ins.</u>

<u>Co. v. Belize NY, Inc.</u>, 277 F.3d 232, 236 (2d Cir. 2002).

     Defendants McCabe and Skully arrested Plaintiff on November 25, 2005, on suspicion

that Plaintiff assaulted and robbed Mr. Joseph Neal on November 13, 2005.  <u>See</u> Docket #25,

Defendants' Local Rule 56.1 Statement (herein, "Defs' 56.1 Statement") at ¶¶1, 9.  Mr. Neal

---

(herein, "Pl's Opp.") at p. 29 n.13; <u>see also</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985)
(observing that a suit against an individual in his or her official capacity "generally represent[s]
only another way of pleading an action against an entity of which [the] officer is an agent.").

claimed that on November 13, 2005, he was robbed by a "light skinned Hispanic male" who brandished an unidentified sharp object and that he sustained wounds to his leg and head. See Defs' 56.1 Statement at ¶¶1, 2. Following the assault, Mr. Neal walked himself to St. Joseph's Hospital, which was only steps away from the site of the robbery, and received medical attention for his injuries. Id. at ¶2.

Non-party Yonkers Police Officers Rodriguez and Capuano responded to the radio report of a robbery in the vicinity of New Main Street and Nepperhan Avenue in Yonkers, New York. See id. at ¶3. Officer Rodriguez interviewed two witnesses to the robbery who provided rough details of the suspect and then "spoke briefly to [the victim] in the emergency room" of St. Joseph's Hospital who also provided a rough description of the assailant. Id. Pursuant to Yonkers Police Department procedure, Officer Rodriguez "notified the Detective Division of the robbery while at St. Joseph's Hospital in order to permit detectives to conduct an investigation." Id. at ¶4. Defendant Detective Chiarella and his partner, non-party Detective Barbato, responded as a result of the robbery report sent by Officer Rodriguez and conducted a further interview of Mr. Neal in the hospital emergency room. Id. Mr. Neal conveyed the same details of the robbery suspect to Defendant Chiarella that he had provided earlier to Officer Rodriguez, which Defendant Chiarella noted, along with his own observation that Mr. Neal remained "shaken" during the course of the interview. Id. at ¶¶4-5. "Detective Chiarella provided [Mr.] Neal with his phone number and asked [Mr.] Neal to call him at the Detective Division at a later date." Id. at ¶5.

Mr. Neal claimed that he subsequently encountered his assailant – the Plaintiff in the instant action – on three occasions while working at St. Joseph's Hospital in his position as a

Unit Manager of the Operating Room. <u>See</u> Defs' 56.1 Statement at ¶¶6-8. Mr. Neal claims to have seen Plaintiff twice in the hospital's cafeteria – first on November 18, 2005, and then again on either November 21 or 22, 2005 – and to have seen Plaintiff a third time in the hospital operating room on November 23, 2005. <u>Id.</u> Mr. Neal contacted the hospital security staff after the first and second encounters with Plaintiff and made a further investigation into Plaintiff's identity after the third encounter with Plaintiff. <u>Id.</u> Mr. Neal, however, never contacted the police. <u>See id.</u> at ¶7 (suggesting that Mr. Neal declined to contact the police "because he was fearful of being retaliated against in the event that suspect was not apprehended."). Following his third encounter with Plaintiff, Mr. Neal learned that Plaintiff was also a hospital employee who was a member of the hospital's maintenance staff. <u>See id.</u> at ¶8. On November 25, 2005, two days after his third encounter with Plaintiff, Mr. Neal contacted St. Joseph Hospital's Human Resources Manager, Ms. Nicole Beckford, and complained formally to her that a fellow hospital employee had robbed him earlier that month. <u>See id.</u> at ¶9.

Defendants McCabe and Skully responded to a call placed by a St. Joseph's Hospital employee that a robbery suspect had been identified and spoke with Mr. Neal and Ms. Beckford upon arriving at the hospital. <u>Id.</u> at ¶11. Defendants claim that they interviewed Mr. Neal briefly in the hospital and then brought Mr. Neal to the Detective Division, at which time Mr. Neal provided a full account of his encounters with Plaintiff. <u>Id.</u> at ¶11. Mr. Neal provided Defendants McCabe and Skully with a full description of Plaintiff, explained to them his encounters with Plaintiff in the hospital, and identified Plaintiff in a photograph array prepared by Defendant McCabe. <u>Id.</u> at ¶¶11, 12. Defendants maintain in their Rule 56.1 Statement that they then "met [Mr.] O'Brien in the E.R. after they spoke to [Mr.] Neal and Mrs. Beckford." <u>See</u>

4

id. at ¶13.  As noted by Plaintiff, however, the timeline proffered by Defendants is not congruous: Defendants claim to have left the hospital with Mr. Neal yet "met" Plaintiff in the E.R. after speaking with Mr. Neal and Ms. Beckford.  Compare Defs' 56.1 Statement at ¶11, with id. at ¶13; see also Docket #36, Plaintiff's Responsive 56.1 Statement (herein, "Pl's 56.1 Response") at ¶13.  Despite this ambiguity, Defendants maintain that they confronted Plaintiff in the emergency room of the hospital, brought him to the police station, advised him of his Miranda rights, and ended conversation with him after he requested to speak to an attorney.  See Defs' 56.1 Statement at ¶13.

Plaintiff was subsequently charged with robbery in the first degree and on December 21, 2005, Plaintiff was ordered detained by the Honorable Robert Cerrato, Yonkers City Court Judge.  See Defs' 56.1 Statement at ¶¶17-18.  On January 26, 2006, Plaintiff was indicted on the charge of robbery in the first degree, and following several pretrial motions challenging the sufficiency of the evidence put forth to the grand jury and the propriety of the pretrial lineup procedures utilized by the police, Plaintiff was acquitted of all charges by a jury in New York State Supreme Court, Westchester County.  See Defs' 56.1 Statement at ¶¶19-24.

Plaintiff largely agrees with the facts presented by Defendants in their Rule 56.1 Statement.  Plaintiff, however, objects to certain specific assertions proffered by Defendants, including facts surrounding Mr. Neal's ability to remember details of the robbery and the degree of cooperation provided by Mr. Neal and the two eyewitnesses.  See, e.g., Pl's 56.1 Response at ¶¶1-6 (noting that Mr. Neal provided inconsistent accounts of the robbery and inconsistent details about the suspect); at ¶15 (noting that Defendants failed to produce police reports following the interviews with the alleged eyewitnesses).  Plaintiff relies upon these allegations of inconsistency

and deviation from establish investigative practices in support of his claim that Defendants McCabe and Skully did not have probable cause to arrest Plaintiff on November 25, 2005, and that the grand jury indictment against him was procured through improper means. Plaintiff also highlights that the point in time when Defendants McCabe and Skully arrested Plaintiff is in dispute and suggests that this dispute is critical given that probable cause for a warrantless arrest is determined at the time of arrest. Plaintiff therefore concludes that a probable cause determination cannot be made as a matter of law on a motion for summary judgment when the time of the arrest is in dispute and that Defendants' motion for summary judgment should be denied. See Pl's 56.1 Response at ¶13.

B.    Procedural History and Summary of Arguments Raised in Connection with Defendants' Motion for Summary Judgment

Plaintiff commenced the instant action against the City of Yonkers and Defendants Chiarella and McCabe on May 22, 2007. See Docket #1, Complaint. On June 3, 2008, Plaintiff filed an Amended Complaint substituting Defendant Skully as a named defendant for one of the John Doe defendants named in the original Complaint. See Docket #16, Amended Complaint. Following the parties' completion of pretrial discovery managed by the undersigned, Defendants now seek complete dismissal of Plaintiff's Amended Complaint. Oral argument was heard on Defendants' motion for summary judgment on November 10, 2008.

Defendants argue that each of Plaintiff's claims fail as a matter of law because of the existence of probable cause. Defendants McCabe and Skully assert that they had probable cause to arrest Plaintiff on November 25, 2005, after Mr. Neal identified Plaintiff as his assailant and the Defendants collectively posit that the grand jury's indictment of Plaintiff on the first degree

robbery charge raises a strong presumption that the Plaintiff's criminal prosecution was supported by probable cause. See Defs' Mem. at pp. 4, 11-15. Defendants also maintain that Plaintiff cannot establish through any admissible evidence that Plaintiff's criminal prosecution was instituted out of malice or ill will or that Defendants sought to obtain a collateral objective by commencing the criminal proceedings against Plaintiff. See Def's Mem. at pp. 11-20.

Plaintiff opposes Defendants' motion and argues that issues of fact exist on each of his Fourth Amendment claims. Plaintiff claims that Defendants McCabe and Skully could not have had probable cause to arrest him on November 25, 2005, in light of the variations and fluctuations in Mr. Neal's account of the robbery and the assailant. See Docket #34, Plaintiff's Memorandum in Opposition (herein, "Pl's Opp.") at pp. 7-8. Plaintiff claims that Mr. Neal only offered a perfunctory description of the assailant to the police on the date of the robbery but that he offered a more detailed description of the suspect following his subsequent encounters with Plaintiff in the hospital. Plaintiff suggests that Mr. Neal's observations of Plaintiff in the hospital jaded Mr. Neal's recollection of the robbery suspect and that Mr. Neal's detailed description of the assailant is the product of these subsequent encounters with Plaintiff and is not the product of his recollection of the person who assaulted him on November 13, 2005. See Pl's Opp. at pp. 9-12. Plaintiff suggests that Defendants McCabe and Skully should have performed a more thorough investigation of Mr. Neal's allegations prior to arresting Plaintiff in light of the inconsistencies supplied by Mr. Neal.

Plaintiff additionally opposes the branch of Defendants' summary judgment motion challenging the sufficiency of his malicious prosecution and abuse of criminal process claims. Plaintiff advances that the Defendants were coerced into "making" an arrest after Mr. Neal's

7

uncle, a member of the New York City police department, allegedly called Defendant Skully and admonished Defendant Skully and the Yonkers police department for not being more proactive on Mr. Neal's case. See Pl's Opp. at pp. 16-18. Plaintiff suggests that Defendants responded to Mr. Neal's identification of Plaintiff swiftly to escape additional criticism about the manner and progress of the criminal investigation and advances that his claims of malicious prosecution and abuse of criminal process are colorable in light of these allegations of improper external influence and coercion. Plaintiff also argues that the presumption of probable cause that accompanies a grand jury indictment is called into question in this case due to the incomplete factual account provided to the grand jury, due to several deviations from standard police procedures that are alleged to have occurred, and due to the Defendants proceeding in bad faith. See Pl's Opp. at pp. 16-26.

For the following reasons I conclude, and respectfully recommend that Your Honor should conclude, that Plaintiff's false arrest claim fails as a matter of law because Defendants McCabe and Skully had probable cause to arrest Plaintiff on November 25, 2005, and that Plaintiff's malicious prosecution and abuse of criminal process claims fail because of the absence of evidence supporting Plaintiff's claims that his criminal prosecution was instituted out of malice or that his criminal prosecution was commenced in order to obtain an impermissible collateral objective. I respectfully recommend that Defendants' motion for summary judgment should be granted in its entirety and that Plaintiff's Amended Complaint should be dismissed.

## DISCUSSION

A.    Summary Judgment Standard and Local Rule 56.1

1.    Summary Judgement Standard

8

Pursuant to the Federal Rules of Civil Procedure, summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 320-23 (1986). A fact is "material" when it may affect the outcome of a case under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id. A trial judge may, therefore, grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. Id. at 250. The inquiry performed is the threshold inquiry of determining whether there are any genuine factual issues that properly can be resolved only by a finder of fact. Id.

Summary judgment may be granted only "[i]f after discovery, the nonmoving party 'has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof.' " Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex, 477 U.S. at 323) (alteration in original). "The nonmoving party must have 'had the opportunity to discover information that is essential to his [or her] opposition' to the motion for summary judgment." Trebor Sportswear Co. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir.1989) (quoting Anderson, 477 U.S. at 250 n. 5). Moreover, a court should "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in its favor." Mount Vernon Fire Ins. Co., 277 F.3d at 236; Farias v. Instructional Sys., Inc., 259 F.3d 91, 97 (2d Cir. 2001); Quinn v. Green Tree Credit Corp., 159 F.3d 759, 764 (2d Cir. 1998); see also Anderson, 477 U.S. at 261 n.2. Thus, "[o]nly when no reasonable trier of fact could find

9

in favor of the nonmoving party should summary judgment be granted." <u>Cruden v. Bank of New</u> <u>York</u>, 957 F.2d 961, 975 (2d Cir. 1992) (quoting <u>H.L. Hayden Co. of New York, Inc. v. Siemans</u> <u>Med. Sys. Inc.</u>, 879 F.2d 1005, 1011 (2d Cir. 1989)).

        2.      Local Rule 56.1

        Pursuant to the Local Rules for the Southern and Eastern Districts of New York, a moving party must attach a "separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried." <u>See</u> Local Rule 56.1(a). A similar requirement is imposed upon the party opposing the motion for summary judgment. <u>See</u> Local Rule 56.1(b) (requiring the party opposing a motion for summary judgment to identify the material facts which it contends are in dispute). Should the non-moving party fail to respond to the facts alleged by the moving party to be undisputed, those facts "will be deemed to be admitted for purposes of the motion . . . ." Local Rule 56.1(c). Importantly, "[e]ach statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e)." <u>See</u> Local Rule 56.1(d). This requirement "free[s] district courts from the need to hunt through voluminous records without guidance from the parties." <u>Holtz v.</u> <u>Rockefeller Co.</u>, 258 F.3d 62, 74 (2d Cir. 2001) (citations omitted).

        Thus, as a general rule, the Court may accept as true the material facts asserted by the moving party in an unopposed Rule 56.1 statement. <u>See</u> <u>Gubitosi v. Kapica</u>, 154 F.3d 30, 31 n.2 (2d Cir. 1998). The Second Circuit has cautioned, however, that the opposing party's failure to comply with the local rules does not absolve the moving party from meeting its own burden of

proof in its motion for summary judgment. See Holtz, 258 F.3d at 72-74. The Holtz court also noted that a district court has "broad discretion" to determine whether to overlook noncompliance with the local rules. Id. at 73. Synthesizing the spirit of the Local Rules, and the Holtz court's decision, failure to respond to a moving party's Rule 56.1 Statement may mean that the uncontested facts contained therein will be assumed to be true for the purposes of the motion if such facts are properly supported by citations to admissible evidence. See Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003).

In light of this Court's "broad discretion" to determine the effect of noncompliance with the Local Rules, Holtz, 258 F.3d at 73, and because the Defendants' Rule 56.1 Statement is replete with citations to admissible evidence, I find that the uncontested facts asserted in the Defendants' Rule 56.1 Statement should be assumed to be true for the purposes of this motion.

B.    Defendants' Motion for Summary Judgment

1.    False Arrest

A false arrest claim articulated under the Fourth Amendment, made actionable by 42 U.S.C. §1983, draws its elements from the common law tort of false imprisonment. See Singer v. Fulton Co. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). False arrest, as a subspecies of the broader claim of false imprisonment, consists of four elements: (1) defendant's intentional confinement of the plaintiff; (2) plaintiff's consciousness of the confinement; (3) an absence of consent to the confinement; and (4) an absence of the confinement being "otherwise privileged." Id.; see also Wallace v. Kato, 127 S. Ct. 1091, 1095 (2007). Reasonableness lies at the heart of most Fourth Amendment claims and "a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is

11

bring committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004); see also Brigham City v. Stuart, 547 U.S. 398, 403 (2006) ("the ultimate touchstone of the Fourth Amendment is 'reasonableness. . . ' "). As such, probable cause to effectuate a warrantless arrest is a complete defense to a claim of false arrest and the defendant-officer advancing probable cause as an affirmative defense bears the burden of establishing that he or she had probable cause to arrest the plaintiff absent a warrant. See Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994).

Probable cause is assessed using an objective standard that focuses on the totality of the circumstances presented "to the arresting officer at the time of the arrest." Devenpeck, 543 U.S. at 152; see also Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006). Probable cause does not require that an arresting officer have absolute certainty about the circumstances surrounding a possible crime prior to arresting a suspect, see Illinois v. Gates, 462 U.S. 213, 238 (1983); probable cause only requires that an officer have " 'knowledge or reasonable trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.' " Singer, 63 F.3d at 119 (quoting Calamia v. City of New York, 879 F.2d 1025, 1032 (2d Cir. 1989)). Under this standard of reasonableness, "[a]n arresting officer advised of a crime by a person who claims to be the victim . . . has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity." Id.; see also Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists . . .").

Defendants McCabe and Skully contend that they had probable cause to arrest Plaintiff on November 25, 2005, following Mr. Neal's allegation that Plaintiff, who was identified by name,

12

had robbed him earlier that month.  Plaintiff, however, claims that the Defendants should have conducted a further investigation into Mr. Neal's accusations given Mr. Neal's inconsistent accounts about the robbery and his varied descriptions of the assailant.  Plaintiff acknowledges that probable cause to make a warrantless arrest may be based upon a from a putative victim's complaint to a police officer but argues that the facts and circumstances of this case exempt it from this general rule of Fourth Amendment case law.  See Pl's Mem. at p. 7.

Plaintiff's efforts to place this case within the aforementioned exception to probable cause based upon a victim's complaint is unconvincing.  When reviewing the propriety of a false arrest claim on summary judgment, the Court must "focus on the validity of the arrest, and not the validity of each charge." Jaegly, 439 F.3d at 154.  The Court, therefore, must look to the objective facts known to the Defendants at the time of Plaintiff's arrest.  Id. (citing Devenpeck, 543 U.S. at 152-53).  At the time of Plaintiff's arrest, Defendants were aware of Mr. Neal's photographic identification of Plaintiff and his description of Plaintiff as his attacker.  See Def's 56.1 Statement at ¶¶9-12.  Defendants also "learned from [Mr.] Neal that a police report was taken the day of the incident [and] they reviewed Officer Rodriguez's incident report at the Detective Division prior to arresting O'Brien." Id. at ¶13.  Officer Rodriguez's report contains a brief recitation of the incident and a notation that Mr. Neal and the two eyewitnesses "may be able to identify the suspect." See Docket #25, Affirmation of Rory McCormick in Support of Motion for Summary Judgment (herein, "McCormick Aff."), Ex. A.  Nothing in Officer Rodriguez's report, or in the description and identification provided by Mr. Neal, when compared to the information provided to Defendants McCabe and Skully by Mr. Neal on November 25, 2005, raises questions about Mr. Neal's veracity or suggests that Mr. Neal's

statements were not credible at that time.

Plaintiff argues that Mr. Neal provided equivocal statements to Defendant Chiarella on November 12, 2005, about his ability to identify his assailant and that had Defendants McCabe and Skully been aware of these equivocations they would have had to conduct a further investigation prior to arresting Plaintiff.  See Pl's Mem. at p. 8.  The Defendants' deposition testimony that Plaintiff relies upon in support of this argument, however, makes clear that the Defendants would have preferred to have known such information, not that they knew such information and disregarded it in an attempt to expedite Plaintiff's arrest.  See Pl's Mem. at p. 8 ("In fact, if Det. Skully had known about this information prior to plaintiff's arrest – which he did not because he 'didn't see a need' for speaking with Detective Chiarella prior to the arrest – he would have wanted to 'challenge Mr. Neal' regarding his original statements to Det. Chiarella.").  Police officers, however, are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest" and "an officer is not required to eliminate every possible line of impeachment that might apply to a victim complainant."  Koester v. Lanfranchi, 288 Fed. Appx. 764, 765 (2d Cir. Aug. 13, 2008).  Thus, while additional information may have been helpful to the Defendants, the Defendants were not required to conduct a complete investigation prior to arresting Plaintiff.

Plaintiff's argument that the account of the attack that Mr. Neal provided to Defendant Chiarella on November 12, 2005, differs from the account of the attack that Mr. Neal provided to Defendants McCabe and Skully on November 25, 2005, does not alter this recommendation. Plaintiff has propounded no information that would support his argument that Defendants McCabe and Skully knew of Defendant Chiarella's report or the statements Mr. Neal made to

14

Defendant Chiarella at the time they arrested Plaintiff on November 25, 2005.  Compare Docket
#35, Declaration of Jon Norinsberg (herein, "Norinsberg Decl."), Ex. D, Yonkers Police
Department Supplementary Report, with McCormick Aff., Ex. D, Statement of Joseph Neal
(containing differing descriptions of facts of attack and Mr. Neal's ability to recall details of the
attacker).  Although conflicting accounts of the robbery and the suspect are memorialized in
several police memoranda, there is no evidence in the record that suggests that these
inconsistencies were presented to Defendants McCabe and Skully at the time they arrested
Plaintiff or were known to Defendants McCabe and Skully when they interviewed Mr. Neal.
Moreover, Defendant Chiarella prepared his supplementary police report on November 29, 2005,
days *after* Plaintiff's arrest and without any knowledge that Defendants McCabe and Skully had
made an arrest in the case.  See McCormick Aff., Ex. Y, Deposition of Defendant Chiarella at p.
18.  Plaintiff's attempt to rely upon the information within this report as evidence that Mr. Neal
provided inconsistent statements to Defendants McCabe and Skully is without merit given that
this report was created after Plaintiff's arrest.  Plaintiff's argument that the mere existence of
these conflicts in the abstract required Defendants McCabe and Skully to conduct a further
investigation is contrary to well-established Second Circuit case law.[3]

     Plaintiff has come forth with no evidence in support of his assertion that Defendants
McCabe and Skully were aware of any circumstances that would call Mr. Neal's veracity into
doubt when they arrested Plaintiff.  Each of the inconsistencies relied upon by Plaintiff in
opposition to Defendants' motion for summary judgment appear to be *post hoc* facts that

---

     [3] As noted by the undersigned during oral argument, these inconsistencies may have
contributed to the jury's acquittal of the Plaintiff in his criminal trial; these inconsistencies,
however, do not create triable issues of fact on Plaintiff's false arrest claim in this case.

surfaced after Defendants McCabe and Skully arrested Plaintiff. The evidence marshaled by
Plaintiff does not support the argument that the Defendants should have questioned Mr. Neal's
veracity at the time they interviewed Mr. Neal in the hospital or in the police station. Plaintiff's
additional argument questioning the time and place of Plaintiff's arrest does not alter the
undersigned's recommendation; whether Plaintiff was arrested in the hospital or in the police
station, the evidence supplied by Plaintiff does not raise genuine issues of material fact as to
whether Defendants McCabe and Skully were presented with information or circumstances that
called Mr. Neal's veracity into doubt on November 25, 2005. No matter where and when the
arrest took place, Mr. Neal's statements provided probable cause to support the arrest. I therefore
conclude, and respectfully recommend that Your Honor conclude, that Plaintiff's false arrest
claim against Defendants McCabe and Skully fail as a matter of law and should be dismissed.

    2.    Malicious Prosecution

    Plaintiff's claim for malicious prosecution, which is also a Fourth Amendment
constitutional tort actionable under 42 U.S.C. §1983, <u>see</u> <u>Singer</u>, 63 F.3d at 115 (discussing
<u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (establishing a preference that constitutional claims
be asserted under an "explicit textual source of constitutional protection" rather than a
generalized notion of due process)), is comprised of four elements: "(1) the defendant
commenced or continued a criminal proceeding against plaintiff; (2) the proceeding terminated in
plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) the
defendant initiated the criminal proceeding out of malice." <u>Bernard</u>, 25 F.3d at 104; <u>see also</u>
<u>Boyd v. City of New York</u>, 336 F.3d 72, 76 (2d Cir. 2003). In instances where a criminal
prosecution is maintained by a grand jury indictment, a rebuttable presumption of probable cause

16

is created that a plaintiff may attempt to controvert through a showing of "fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith." Boyd, 336 F.3d at 76 (quoting Colon v. City of New York, 60 N.Y.2d 78, 83 (1983)). In such cases the plaintiff bears the burden of establishing that there exist genuine issues of material fact on his or her claim that the defendant's misconduct or perjurious testimony resulted in the grand jury returning an indictment. See Bernard, 25 F.3d at 104.

Plaintiff argues that the record contains sufficient evidence to support his claim that the presumption of probable cause created by the grand jury indictment is called into question in this case. See Pl's Mem. at p. 16. Plaintiff relies heavily upon the assertion that Mr. Neal's uncle, who is allegedly a member of the New York City Police Department, called Defendant Skully on November 25, 2005, and pressured Defendant Skully to make an arrest after allowing the investigation to languish. Id. at p. 17 ("a reasonable jury could conclude that Sgt. Skully arrested plaintiff not because he had probable cause to do so, but rather, because he was pressured to do so by Mr. Neal's uncle . . ."). Plaintiff also suggests that Defendant Chiarella withheld pertinent information during his grand jury testimony and failed "to disclose . . . critical information to the Grand Jury," see Pl's Mem. at p. 19, including some of the inconsistent statements and descriptions Mr. Neal provided to the police. Finally Plaintiff advances that Defendants' severe deviations from established police procedure create issues of fact on Plaintiff's malicious prosecution claim and raise inferences that the grand jury indictment's presumption should be obviated. See Pl's Mem. at pp. 21-24.

Courts within this Circuit have drawn a clear distinction between the withholding of exculpatory information from the grand jury and the withholding of inconsistent or unfavorable

17

information from the grand jury. Such cases firmly establish that the former, not the latter, rebuts

the probable cause presumption that accompanies a grand jury indictment. See Richards v. City

of New York, 97 Civ. 7990 (MBM), 2003 WL 21036365, at *17 (S.D.N.Y. May 7, 2003)

(distinguishing between withholding discrepancies and withholding exculpatory information

under New York case law); see also Drummond v. Castro, 522 F. Supp. 2d 667, 677-78

(S.D.N.Y. 2007); Williams v. City of New York, 02 Civ. 3693 (CBM), 2003 WL 22434151, at

*6-7 (S.D.N.Y. Oct. 23, 2003), aff'd 120 Fed. Appx. 388 (2d Cir. 2005). These cases confirm

that withholding some information from the grand jury does not controvert the grand jury's

indictment; in order to obviate the indictment's presumption of reasonableness, the information

withheld from the grand jury must be of the kind that " 'might have effected the results' of the

probable cause determination." Richards, 2003 WL 21036365 at *17 (quoting Ramos v. City of

New York, 285 A.D.2d 284, 299-300 (1st Dep't 2001)).

     A review of the arguments advanced by Plaintiff lead me to conclude, and respectfully

recommend that Your Honor conclude, that Plaintiff has only shown that inconsistent evidence

collected during the criminal investigation was withheld from the grand jury and that Plaintiff

has not demonstrated that exculpatory evidence was withheld. See Pl's 56.1 Response at ¶19

("Detective Chiarella failed to disclose to the Grand Jury the critical fact that the complainant,

Mr. Neal, had originally told him that 'he did not get a good view of the suspect and would

probably not be able to identify him.' "). Under the authority discussed above, withholding Mr.

Neal's varying descriptions of his assailant or his varying accounts of the robbery do not

undermine the grand jury's indictment; such information falls outside of the scope of exculpatory

information that could negate the indictment's presumption of reasonableness if withheld. See

Williams, 2003 WL 22434151 at *7 (citing Gisdoni v. Harrison, 72 N.Y.2d 280, 285 (1988)).

      Plaintiff's attempt to debase the grand jury indictment through his argument that Mr. Neal's uncle coerced the Defendants into making an arrest also fails on summary judgment. Although Plaintiff suggests that an impermissible motive drove the Defendants' desire to arrest a suspect, Plaintiff cannot establish, through admissible evidence, that such improper pressure was placed on the Defendants.  In order to create a genuine issue of material fact for trial, a plaintiff must support his or her claims through citation to admissible evidence.  See Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 309-10 (2d Cir. 2008); FED. R. CIV. P. 56(e)(1); Local Rule 56.1(d).  Importantly, "hearsay testimony . . . that would not be admissible if testified to at the trial may not properly be set forth in the Rule 56(e) affidavit."  Salvino, 542 F.3d at 310.

      In this case, however, the only evidence of any alleged improper pressure being placed on the Defendants appears in an affidavit that contains hearsay statements that would be inadmissible at trial.  Plaintiff proffers the affidavit of Ms. Nicole Beckford, St. Joseph's Hospital's Human Resources Manager, which contains Ms. Beckford's statements that "Mr. Neal informed me that his uncle worked for the New York City Police Department, and that he had called his uncle and had asked him to make a call to the Yonkers Police Department regarding this matter."  See Norinsberg Decl., Ex. H, Affidavit of Nicole Beckford (herein, "Beckford Aff.") at ¶7.  Ms. Beckford also avers that "Mr. Neal further informed me that his uncle had, in fact, called the Yonkers Police Department and had spoken to Sgt. Skully of the Yonkers Police Department about this incident."  See Beckford Aff. at ¶8.  Ms. Beckford's statements about the alleged conversation she had with Mr. Neal, along with the information Mr. Neal provided Ms.

Beckford, are based upon the out of court hearsay statements of Mr. Neal – a non-party to this case – are offered for the truth of the matter asserted, and do not appear otherwise admissible under the Federal Rules of Evidence.  See FED. R. EVID. 802 ("Hearsay is not admissible . . ."); FED. R. EVID. 804(b)(1) (permitting use of former testimony of an unavailable declarant when declarant testified in prior proceeding).[4]  Plaintiff therefore cannot rely upon the hearsay statements contained within Ms. Beckford's affidavit to support his assertion that Mr. Neal's uncle coerced the Defendants into making an arrest or prosecuting Plaintiff.

Lastly, Plaintiff's suggestion that the Defendants committed various deviations from established police procedure during their criminal investigation does not serve as a sufficient basis to question the grand jury indictment.  Neither Defendants' allegedly improper line up procedures nor their allegedly incomplete questioning rise to the level of an egregious deviation from acceptable police procedure that could be used to controvert the probable cause presumption created by the grand jury's indictment and do not "demonstrate an intentional or reckless disregard for proper procedures."  Richards, 2003 WL 21036365, at *14.  The Second Circuit has held that such reckless conduct or material deviation from police procedure includes lying to the grand jury and presenting false information to the grand jury.  See Boyd, 336 F.3d at 77 (holding that defendants' presentation of information obtained in violation of suspect's Miranda rights, based upon defendants' alleged fabrication of place and time of arrest, raised questions of fact about reliability of grand jury indictment).  Second Circuit case law also

---

[4]  Plaintiff has been unable to depose Mr. Neal or to secure an affidavit from Mr. Neal during discovery in this case.  Although Mr. Neal testified at Plaintiff's criminal trial, the Defendants in this action were not parties to the criminal proceeding and did not have an opportunity to cross examine Mr. Neal on this issue.  Federal Rule of Evidence 804(b)(1) thus would not allow Mr. Neal's prior sworn testimony to be used at trial in this case.

20

establishes that a grand jury indictment "breaks the chain of causation between the officer's conduct and the claim of malicious prosecution . . . thereby abolishing the officer's responsibility for the prosecution." Williams, 2003 WL 22434151, at *6 (citing Townes v. City of New York, 176 F.3d 138, 147 (2d Cir. 1999)).  Having been presented with no argument that Defendant Chiarella – the only named Defendant in this case who testified before the grand jury – misled prosecutors or knowingly presented false information to the grand jury, I respectfully recommend that Plaintiff's malicious prosecution claim against Defendant Chiarella fails as a matter of law.

     3.     Abuse of Criminal Process

In order to state a claim for abuse of process, Plaintiff must establish (1) a defendant's use of legal process to compel performance or forbearance of some action, (2) with the intent to do harm without excuse or justification, (3) in order to obtain a collateral objective outside the legitimate ends of the process.  See Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994).  Historically, the tort of abuse of process was considered "obscure," see Bd. of Educ. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Teachers Ass'n, Inc., 38 N.Y.2d 397, 400 (1975), and a close cousin to the tort of malicious prosecution, Mormon v. Baran, 35 N.Y.S.2d 906, 908 (Nassau Co. Sup. Ct. 1942).  Whereas the gravamen of a malicious prosecution claim is that a defendant maliciously uses legal process without justification or proper motive, an abuse of process claim arises when a defendant causes legal process to issue for an unjustified collateral purpose.  See Savino v. City of New York, 331 F.3d 63, 77 (2d Cir. 2003) (explaining that an abuse of process claim is based upon an improper purpose for instituting legal process); see also Hauser v. Bartow, 273 N.Y. 370, 374 (1937) ("As soon as the actor uses the process of the court, not to effect its proper function, but to accomplish *through it* some collateral object, [he or she]

21

commits [the tort of abuse of process].") (emphasis in original).

Plaintiff suggests that the alleged pressure placed on the Defendants to make an arrest and prosecute the Plaintiff satisfies the impermissible objective prong of an abuse of process claim. As discussed *supra*, however, this alleged improper purpose cannot be established through citation or reliance upon admissible evidence.  Plaintiff's sole argument on this ground is that Defendant Skully received a phone call from the victim's uncle and was pressured into making an arrest.  See Pl's Mem. at pp. 25-26.  Although Defendant Skully testified at his deposition that he received a phone call from a person about this incident, Defendant Skully denied that the caller was related to Mr. Neal or that the caller chided him for failing to make an arrest in the case.  See Norinsberg Decl., Ex. E, Deposition of Defendant Skully at p. 97-98.  Defendant Skully's admission of the receipt of a phone call, alone, does not raise a genuine issue of material fact as to whether the Defendants commenced Plaintiff's criminal prosecution for an improper purpose; drawing the inference that the caller pressured Defendant Skully into arresting the Plaintiff would be supplementing Defendant Skully's deposition testimony with facts not otherwise contained in the record.[5]

I therefore conclude, and respectfully recommend that Your Honor conclude, that Defendants' motion for summary judgment seeking dismissal of Plaintiff's abuse of criminal process claim should be granted.

---

[5] Moreover, it is questionable whether Plaintiff's argument that Defendants arrested Plaintiff for an improper purpose – i.e. to escape scrutiny and criticism – constitutes an improper collateral objective for the purposes of an abuse of criminal process claim.  It appears that Plaintiff's argument in support of his abuse of criminal process claim is a variant of his argument as to the improper motive advanced in support of his malicious prosecution claim.

4.    Personal Involvement of Defendants

It appears that each of Plaintiff's causes of action, even if supported by admissible evidence, would not be actionable against each of the Defendants.  In order for a plaintiff to maintain a colorable §1983 claim against a defendant, a plaintiff must establish a defendant's personal involvement in the challenged activity.  See Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (explaining that the personal involvement of a defendant is a prerequisite to an award of damages in §1983 action).  From the arguments supplied by Plaintiff in his memorandum of law, and from the arguments advanced by counsel during oral argument, it appears that Plaintiff's false arrest claim is directed against Defendants McCabe and Skully, the officers who arrested Plaintiff, that his malicious prosecution claim is directed against Defendant Chiarella, the officer who testified before the grand jury, and that his criminal abuse of process claim is directed against each of these three Defendants.  Should Your Honor disagree with the aforementioned recommendations and conclude that there exist genuine issues of material fact on Plaintiff's claims, the undersigned respectfully recommends that Plaintiff's false arrest claim against Defendant Chiarella and that Plaintiff's malicious prosecution claim against Defendants McCabe and Skully should be dismissed for want of the respective Defendants' personal involvement in the actions serving as the grounds for those particular causes of action.[6]

5.    Remaining Arguments Raised in Defendants' Motion for Summary Judgment

As discussed above, each of Plaintiff's causes of action for constitutional wrongdoing are

---

[6] Should Your Honor conclude that Plaintiff presents genuine issues of material fact on some or all of his claims, Your Honor could refer the matter back to the undersigned for the limited purpose of considering whether summary judgment on the basis of qualified immunity is appropriate.

23

predicated upon the Fourth Amendment and are made actionable under 42 U.S.C. §1983.

Plaintiff's first cause of action, which asserts generalized constitutional claims and generic due

process violations, is not colorable after the Supreme Court's decision in Albright v. Oliver, 510

U.S. 266 (1994), and should be dismissed.  Additionally, because the undersigned respectfully

recommends that Plaintiff fails to establish triable issues of fact on his claims, the Court need not

consider Defendants' alternative argument seeking summary judgment on the basis of qualified

immunity.

## CONCLUSION

For the aforementioned reasons I conclude, and respectfully recommend that Your Honor

conclude, that Defendants' motion for summary judgment, Docket number 25, challenging each

of Plaintiff's Fourth Amendment common law tort claims should be granted and that Plaintiff's

Amended Complaint should be dismissed in its entirety.

## NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended, and FED. R. CIV. P. 72(b), the parties shall

have ten (10) days, plus an additional three (3) days, pursuant to FED. R. CIV. P. 6(d), or a total of

thirteen (13) working days, see FED. R. CIV. P. 6(a), from the date hereof, to file written

objections to this Report and Recommendation.  Such objections, if any, shall be filed with the

Clerk of the Court with extra copies delivered to the chambers of The Honorable Kenneth M.

Karas at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601,

and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later

appellate review of any order of judgment that will be entered.

24

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: December 8, 2008
       White Plains, New York

                                        Respectfully Submitted,

                                        _____
                                        Lisa Margaret Smith
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

        The Honorable Kenneth M. Karas, U.S.D.J.

        Counsel of Record for Plaintiff and Defendants