UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JESSE O'BRIEN,

                              Plaintiff,

        -v-

THE CITY OF YONKERS, DET. ANTHONY
CHIARELLA, Shield No. 601, Individually and in his
Official Capacity, SGT. KEVIN SKULLY,
Individually and in his Official Capacity, DET.
"JOHN" MCCABE, Shield No. 663, Individually and
in his Official Capacity, and P.O.S "JOHN DOE" #1-
10, Individually and in their Official Capacities,

                              Defendants.

No. 07-CV-3974 (KMK) (LMS)

OPINION AND ORDER
ADOPTING REPORT AND
RECOMMENDATION

Appearances:

Jon Louis Norinsberg, Esq.
Law Offices of Jon L. Norinsberg
New York, NY
*Counsel for Plaintiff*

Rory Carleton McCormick, Esq.
Corporation Counsel, City of Yonkers
Yonkers, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiff Jesse O'Brien filed this action against Defendants Detective Anthony Chiarella

("Chiarella"), Sergeant Kevin Skully ("Skully"), and Detective John McCabe ("McCabe"),

raising claims for violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments

pursuant to 42 U.S.C. § 1983, based on allegations of false arrest, malicious prosecution, and

abuse of criminal process.[1]  Magistrate Judge Smith has issued a thorough Report and

Recommendation ("R&R"), recommending that Defendants' Motion for Summary Judgment be

granted and that Plaintiff's Amended Complaint be dismissed in its entirety.  (R&R 24.)[2]

Plaintiff objects to the recommendations of Magistrate Judge Smith.  For the reasons explained

herein, the Court adopts Magistrate Judge Smith's R&R to the extent it is consistent with this

Opinion.

<u>I. Background</u>

Although the Court assumes the Parties' familiarity with the factual and procedural

background of this case as set forth in the R&R, the Court will briefly summarize the facts most

salient to Plaintiff's objections.

On November 13, 2005, Joe Neal was robbed by an individual in Yonkers, New York.

(Defs.' Statement Pursuant to Local Civil Rule 56.1 ("Defs.' 56.1 Stmt.") ¶ 1; Pl.'s Response to

Defs.' Local Rule 56.1 Statement ("Pl.'s 56.1 Response") ¶ 1.)[3]  Police Officers Rodriguez and

---

[1] Plaintiff also brought claims against the City of Yonkers and against the above-named
Defendants in their official capacities.  In his Opposition to Defendants' Motion for Summary
Judgment, Plaintiff voluntarily relinquished his claim against the City of Yonkers in light of
*Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978).  (Pl.'s Mem. of
Law in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Mem.") 29 n.13.)  Because suits against
individuals in their official governmental capacities are duplicative of suits against the
government entity, *see Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) ("Official-capacity
suits . . . 'generally represent only another way of pleading an action against an entity of which
an officer is an agent.'" (quoting *Monell*, 436 U.S. at 690 n.55)), Plaintiff also has voluntarily
dismissed his claims against Defendants in their official capacities, and the Court does not
consider these claims.

[2] After the initial R&R, Magistrate Judge Smith issued a corrected R&R with minor
changes. (Dkt. No. 41.)  Citations herein refer to the Corrected Report and Recommendation.

[3] Hereinafter, where a statement of fact is undisputed, the Court will cite Defendants'
56.1 Statement only.

Capuano responded to the scene, and Officer Rodriguez spoke to two eyewitnesses, Jorge Tovar and Alejandro Mendoza. (Defs.' 56.1 Stmt. ¶ 3.) Officer Rodriguez interviewed Neal at St. Joseph's Hospital, where he had gone after the robbery, and Neal told Officer Rodriguez that the robber was "in his early 20's, Hispanic, about 5'7[] wearing a gray hooded sweatshirt with a goatee." (*Id.* ¶ 3.) Officer Rodriguez subsequently wrote a report stating that Neal, Tovar, and Mendoza might be able to identify the suspect. (*Id.* ¶ 4.) Defendant Chiarella also interviewed Neal at the hospital, who again stated that the robber was "a Hispanic male about 5'7[] with a goatee wearing a black bubble jacket" and a hood. (*Id.* ¶¶ 4-5.) Defendant Chiarella's notes state that Neal "may/may not be able to" identify the assailant, but that Neal "would remember" his assailant's face "if he saw him again." (*Id.* ¶ 5.) Over two weeks later, Defendant Chiarella wrote a report stating that Neal had stated that "he did not get a good view of the suspect and would probably not be able to identify him." (Affirmation of Rory McCormick ("McCormick Aff.") Ex. H.)

Approximately a week after the robbery, Neal, who worked at St. Joseph's Hospital, saw Plaintiff in the hospital on three different occasions. (Defs.' 56.1 Stmt. ¶¶ 6-8.) Neal thought Plaintiff was his assailant, and he notified his supervisor and hospital security, but he did not notify the police after the first two sightings. (*Id.*) On November 25, 2005, Neal met with the hospital's Director of Human Resources, Nicole Beckford, and told her that Plaintiff was the person who had robbed him. (*Id.* ¶ 9.) After this meeting, a call was placed to the Yonkers Police Department, but the Parties dispute who made this call. Defendants assert that a hospital supervisor called the police, (*id.*), but Plaintiff argues that it was Neal's uncle, a New York City police officer, who contacted the Yonkers Police Department, (Pl.'s 56.1 Response ¶ 9).

After this call was made, Defendants McCabe and Skully went to the hospital at around 10:30 a.m. and spoke to Neal, who told them that Plaintiff was his assailant. (Defs.' 56.1 Stmt. ¶ 10.)[4] At some point on November 25, 2005, Defendants McCabe and Skully arrested Plaintiff and brought him to the Detective Division at the police station. The Parties dispute the sequence of these events—Plaintiff argues that he was arrested at the hospital while Defendants maintain that Plaintiff was arrested later, at the Detective Division. (*Id.* ¶ 13; Pl.'s 56.1 Response ¶ 13.) On the same day, Neal went to the Detective Division and provided a detailed written statement, giving a description of the attacker, affirming that he was able to see his attacker, and relating the three incidents at the hospital. (McCormick Aff. Ex. B.) Defendant McCabe reviewed Officer Rodriguez's incident report, but the Parties contest whether this occurred before Plaintiff was arrested. (Defs.' 56.1 Stmt. ¶ 13; Pl.'s 56.1 Response ¶ 13.)

On November 26, 2005, Defendant McCabe filed a felony complaint charging Plaintiff with robbery in the first degree. (Defs.' 56.1 Stmt. ¶ 14.) On November 29, 2005, Defendant Chiarella, who was unaware of Plaintiff's arrest, wrote a report recommending that Neal's case be considered inactive due to Neal's lack of cooperation. (*Id.* ¶ 16.) On January 26, 2006, Neal and Defendant Chiarella testified before a grand jury in the Supreme Court of New York, which returned a true bill against Plaintiff. (*Id.* ¶ 19.) On August 30, 2006, Plaintiff was acquitted on all charges by a jury. (*Id.* ¶ 24.) Plaintiff had been incarcerated for approximately nine months before he was acquitted. (*Id.*)

---

[4] After admitting in his Rule 56.1 Statement that Defendants McCabe and Skully spoke with Neal at the hospital, (Pl.'s 56.1 Response ¶ 10), Plaintiff now disputes this fact for the first time in his objections to Magistrate Judge Smith's R&R. For the reasons that are explained more fully below, the Court finds that Plaintiff has not offered any admissible evidence to dispute this fact. Indeed, as discussed below, some of the very same exhibits Plaintiff relies on are consistent with Defendants' previously uncontested claim in their Rule 56.1 statement.

<u>II. Discussion</u>

<u>A. Standard of Review</u>

<u>1. Review of Magistrate Judge's Report & Recommendation</u>

A district court reviewing a magistrate judge's report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007).  Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to a magistrate judge's report and recommendation.[5]

Where a party submits timely objections to a report and recommendation—as Plaintiff did here, (Dkt. No. 43)—the district court reviews *de novo* the parts of the report and recommendation to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1.  The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 72(b)(2)).

<u>2. Summary Judgment</u>

Summary judgment may be granted where it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

[5] The 2009 Amendments to the Federal Rules of Civil Procedure increased the time in which a party has to object to a magistrate judge's report, but those amendments do not affect the deadlines in this case.

56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003); *see also Tufariello v. Long Island R.R. Co.*, 458 F.3d 80, 85 (2d Cir. 2006) (noting that a court must draw all reasonable inferences in the nonmovant's favor).

A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim.  In that event, the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citations omitted); *see also Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) ("Once the moving party has made a properly supported showing sufficient to suggest the absence of any genuine issue as to a material fact, the nonmoving party, in order to defeat summary judgment, must come forward with evidence that would be sufficient to support a jury verdict in his [or her] favor.").  "When the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted); *see also McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 215 n.4 (2d Cir. 2006) ("[S]peculation alone is insufficient to defeat a motion for summary judgment.").  "A fact is material when it might affect the outcome of the suit under governing law."  *McCarthy v. Dun*

6

*& Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotation marks omitted).  At summary judgment, a court is not charged with weighing the evidence and determining its truth, but with determining whether there is a genuine issue for trial.  *See Westinghouse Electric Corp. v. N.Y.C. Transit Auth.*, 735 F. Supp. 1205, 1212 (S.D.N.Y. 1990).  A court's goal should be to "isolate and dispose of factually unsupported claims."  *Celotex*, 477 U.S. at 323-24.

### B. False Arrest

#### 1. Guiding Principles

"[A] § 1983 claim for false arrest derives from [the] Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause."  *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).  "In analyzing claims alleging the constitutional tort of false arrest, '[the Second Circuit] ha[s] generally looked to the law of the state in which the arrest occurred.'"  *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007) (quoting *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)); *see also Rheingold v. Harrison Town Police Dep't*, 568 F. Supp. 2d 384, 389 (S.D.N.Y. 2008) ("A claim for false arrest, resting on the Fourth Amendment right to be free from unreasonable seizures, is substantially the same as a claim for false arrest under New York law." (internal quotation marks omitted)).  Under New York law, a plaintiff asserting a false arrest claim "must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Dones v. City of New York*, No. 07-CV-3085, 2008 WL 2742108, at *6 (S.D.N.Y. July 9, 2008) (internal quotation marks omitted); *see also Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003) (same).

A "claim for false arrest will not lie so long as the arresting officer had probable cause to arrest the plaintiff for some crime." *Jaegly*, 439 F.3d at 150. "In determining whether there was probable cause, [the] inquiry is an objective one that focuses on the facts available to the arresting officer at the time of the arrest." *Finigan v. Marshall*, 574 F.3d 57, 61-62 (2d Cir. 2009); *see also Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (noting that "an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause"). An officer has probable cause to arrest if that officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (internal quotation marks omitted); *see also Jaegly*, 439 F.3d at 152 (same). "A district court must look to the 'totality of the circumstances' in deciding whether probable cause exists to effect an arrest." *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (quoting *Illinois v. Gates*, 462 U.S. 213, 233 (1983)). "Where there is no dispute regarding the pertinent knowledge of the arresting officer, probable cause may be determined as a matter of law." *Drummond v. Castro*, 522 F. Supp. 2d 667, 673 (S.D.N.Y. 2007). In contrast, "[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence . . . of probable cause is to be decided by the jury." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997); *see also Brewton v. City of New York*, 550 F. Supp. 2d 355, 366-67 (E.D.N.Y. 2008) (finding that the "overall ambiguity surrounding what actually took place at the precinct [wa]s sufficient to preclude summary judgment on plaintiff's false arrest claims").

As an initial matter, the Court notes that Plaintiff has voluntarily dismissed his false arrest claim against Defendant Chiarella, and the Court therefore will not consider this claim.

(Letter from J. Norinsberg to Court ("Obj.") 11 n.8 (Jan. 5, 2009).)  With regard to the other

Defendants, Magistrate Judge Smith concluded that they had probable cause to arrest Plaintiff

based on Neal's identification of Plaintiff from the photographic array and Neal's "description of

Plaintiff as his attacker."  (R&R 13.)  Magistrate Judge Smith noted that Defendants reviewed

Officer Rodriguez's incident report and that nothing in the report, "when compared to the

information provided to Defendants McCabe and Skully by Mr. Neal on November 25, 2005,

raise[d] questions about Mr. Neal's veracity."  (*Id.*)  Magistrate Judge Smith also found that all

of the other evidence allegedly containing Neal's inconsistent statements was not known to

Defendants at the time of the arrest.  (*Id.* at 14-15.)  As a result, Magistrate Judge Smith

recommended that Plaintiff's false arrest claim be dismissed because "[n]o matter where and

when the arrest took place, Mr. Neal's statements provided probable cause to support the arrest."

(*Id.* at 16.)

### 2. Neal's Written Statement and Photographic Identification

Plaintiff objects to the R&R, first arguing that a genuine issue of material fact regarding

probable cause has been raised because it is unclear when and where Plaintiff was arrested.

(Obj. 3-4.)  Specifically, Plaintiff argues that there is evidence in the record showing that

Plaintiff was arrested at the hospital, instead of at the police station (as Defendants contend), and

that, as a result, Neal's photographic identification and detailed written statement are irrelevant

because they were obtained "after plaintiff's arrest."  (*Id.* at 4 (emphasis omitted).)  Defendants

admit that Plaintiff was "detained" at the hospital, but argue that this was merely a detention

"pending further investigation."  (Letter from Rory McCormick to Court 3 (Jan. 26, 2009).)

An investigative detention amounts to an arrest under the Fourth Amendment if, "in view

of all the circumstances surrounding the incident, a reasonable person would have believed that

he was not free to leave." *Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991) (internal quotation

marks omitted); *see also Brewton*, 550 F. Supp. 2d at 365 ("If a reasonable person would not feel

free to leave police custody, an arrest has likely occurred."). Relevant factors include "'the

threatening presence of several officers, the display of a weapon by an officer, some physical

touching of the person of the citizen, or the use of language or tone of voice indicating that

compliance with the officer's request might be compelled.'" *Pietrangelo v. Alvas Corp.*, 487 F.

App'x 629, 632 (2d Cir. 2012) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980));

*see also Harris v. Queens Cnty. Dist. Attorney's Office*, No. 08-CV-1703, 2012 WL 6630034, at

* 4 (E.D.N.Y. Sept. 15, 2012) (same).

      Here, Defendants maintain that Plaintiff was "merely" detained at the hospital pending an

investigation, but Defendant McCabe testified at his deposition that he considered Plaintiff to be

"placed into custody" at the hospital, (McCormick Aff. Ex. AA, at 70), and that when he

detained Plaintiff at the hospital, he did not think Plaintiff was free to leave, (*id.* at 24).

Moreover, Plaintiff stated at his deposition that when he was confronted by Defendants at the

hospital, they told him to put his hands behind his back and that he was being taken across the

street to the police station. (Decl. of Jon L. Norinsberg ("Norinsberg Decl.") Ex. J, at 34, 63.)[6]

Construing these facts in favor of Plaintiff, as the Court must on summary judgment, Plaintiff

---

[6] Additionally, police department documents show that Plaintiff was arrested at around
11:45 a.m., (McCormick Aff. Ex. I (showing the time of Plaintiff's arrest as 11:45 a.m.); *id.* Ex.
E (showing that Plaintiff signed a *Miranda* waiver at 11:40 a.m.)), a fact that is supported by
Defendant McCabe's testimony that Plaintiff was arrested "before noon," (*id.* Ex. AA, at 22). In
contrast, Neal's detailed written statement is dated "11/25/05" at "12:30 PM" and was signed at
2:00 p.m., (*id.* Ex. D, at 1, 3), and a police document states that Neal's photographic
identification took place in the afternoon, (*id.* Ex. I, at 1). This documentary evidence further
supports Plaintiff's theory that he was arrested at the hospital in the morning, prior to Neal's
giving his written statement and identification at the Detective Division in the afternoon.

has at least raised an issue of fact regarding whether he was arrested at the hospital.  *See*

*Brewton*, 550 F. Supp. 2d at 365-66 (finding that, construing the facts in plaintiff's favor,

plaintiff was arrested when she was placed in an interview room and told she would be

handcuffed if she attempted to leave); *see also McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir.

2006) ("Credibility assessments, choices between conflicting versions of the events, and the

weighing of evidence are matters for the jury, not for the court on a motion for summary

judgment." (brackets and internal quotation marks omitted)).  As a result, Neal's written

statement and photographic identification, which appear to have been taken by the officers after

Plaintiff's detention at the hospital, cannot be considered on this Motion to support probable

cause.  *See Brewton*, 550 F. Supp. 2d at 365-66 (noting that "the facts relevant on [the summary

judgment] motions to the probable cause inquiry [were] those facts known to [the detective]

prior to th[e] earliest alleged confinement" of the plaintiff); *see also Pace v. Town of*

*Southampton*, No. 08-CV-3719, 2010 WL 104244, at *3 (E.D.N.Y. Jan. 13, 2010) ("[F]acts

learned subsequent to the arrest, whether they buttress or belie the existence of probable cause,

are irrelevant to the false arrest claim." (internal quotation marks omitted)).

### 3. Admissibility of Neal's Former Testimony

Even without considering the detailed written statement and photographic identification,

Magistrate Judge Smith concluded that Defendants had probable cause to arrest Plaintiff based

on Neal's statements to Defendants at the hospital on November 25.  (R&R 16.)  In his Rule 56.1

statement, Plaintiff initially admitted that Neal spoke with Defendants McCabe and Skully when

they first arrived at the hospital and told them that he believed Plaintiff was his attacker.  (Defs.'

56.1 Stmt. ¶ 10; Pl.'s 56.1 Response ¶ 10; Pl.'s Mem. 4).  Plaintiff now argues for the first time

in his objections that there is a disputed issue of fact because Neal testified during Plaintiff's

11

criminal trial that he did not speak with the officers at the hospital.  (Obj. 4.)  The *only* evidence
that Plaintiff relies on for this assertion is Neal's testimony during Plaintiff's criminal trial.

Plaintiff reads too much into this testimony.  Neal answered questions about what the
officers did when they first arrived at the hospital.  Initially, Neal was asked on direct
examination whether he spoke to the police when they arrived.  He said that they "just told [him]
to stay there in Human Resources until they told [him that he] could go home."  (McCormick
Aff. Ex. CC, at 99.)  Later, while on cross-examination, Neal was asked whether the police
spoke to Neal "at [the] time" of their arrival.  (*Id.* at 176.)  He said "[n]o" and explained that they
"spoke with [Ms. Beckford] directly."  (*Id.*)  Then Neal was asked if there came a time that the
police spoke with him, to which Neal said "[t]hey told me to come by later to the detective
division," which Neal said he did that afternoon.  (*Id.* at 176-77.)  Thus, while Plaintiff now
(contrary to his position before Magistrate Judge Smith) insinuates that Defendants McCabe and
Skully did not talk to Neal about his belief that Plaintiff was the assailant, the cited testimony
does not *directly* support this new position.  At no time was Neal asked at trial the on-point
question whether the police inquired about his assailant specifically or the incident more
generally.  Thus, Neal's testimony that the police instructed Neal to go home and/or to come to
the Detective Division does not mean that they also did not have a consultation (however brief)
about Neal's identification of Plaintiff as his assailant.

Compared to this ambiguous testimony, Defendants have offered specific and
unequivocal evidence that Detectives McCabe and Skully spoke to Neal at the hospital on
November 25, before they detained Plaintiff.  Both Defendants testified that they spoke to Neal
directly (before speaking with Beckford or in between conversations with Beckford) at the
hospital.  Detective McCabe testified that at this meeting, Neal "informed [McCabe and Skully

that] he was a victim of a robbery back in early November," and that he "saw [the assailant] three separate times within the hospital, and he came to learn that [the assailant] was an employee of the hospital." (McCormick Aff. Ex. AA, at 16.) Detective Skully confirmed that he and Detective McCabe interviewed Neal at the hospital, that Neal told them he had been robbed, and that he had seen the assailant at the hospital. (*Id.* Ex. Z, at 18-19.) According to Skully, Neal gave a detailed description of the assailant, offering information about the assailant's height and facial hair. (*Id.*) Neal and/or Beckford also told both detectives that Neal's assailant was Plaintiff. (*Id.* Ex. AA, at 14; *id.* Ex. Z, at 15.) This testimony is corroborated by Detective Skully's report, (*id.* Ex. B), and Beckford's statements, (Norinsberg Decl. Ex. H. ¶ 9).

In any event, as Magistrate Judge Smith noted, Neal's testimony is hearsay and is not admissible pursuant to the prior testimony hearsay exception under Federal Rule of Evidence 804(b)(1).[7] (R&R 20 n.4.) "Testimony of a nonparty witness that was given at a prior hearing is, when offered for its truth, hearsay." *Patterson v. County of Oneida*, 375 F.3d 206, 219-20 (2d Cir. 2004). *See generally* Fed. R. Evid. 801(c). Such prior testimony "is not admissible at a subsequent trial under the exception for 'former testimony' unless the declarant is unavailable and the party against whom it is offered at the subsequent trial [or the party's predecessor in interest] 'had an opportunity and similar motive' at the prior hearing 'to develop the testimony

---

[7] Federal Rule of Evidence 804 provides in relevant part that "Former Testimony" which "(A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and (B) is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination" is "not excluded by the rule against hearsay if the declarant is unavailable as a witness."

by direct, cross, or redirect examination.'" *Patterson*, 375 F.3d at 220 (quoting Fed. R. Evid.

804(b)(1)); *see also Annunziata v. City of New York*, No. 06-CV-7637, 2008 WL 2229903, at *7

(S.D.N.Y. May 28, 2008) ("In order to admit prior testimony under Rule 804(b)(1), the

proponent has the burden to show by the preponderance of the evidence that (1) the witness is

unavailable; (2) the party against whom the testimony is offered is the same as in the prior

proceeding; and (3) that that party had the same motive and opportunity to examine the witness."

(internal quotation marks omitted)).

Here, Neal appears to be unavailable to testify, since he cannot be located.  (R&R 20

n.4.)  However, Plaintiff has offered no explanation for why this former testimony is admissible

against the Defendant officers, who were not parties to the prior criminal proceeding and who,

therefore, did not have an opportunity to cross-examine Neal.  Although the Assistant District

Attorney in the underlying criminal action questioned Neal on direct examination at the prior

proceeding, the District Attorney's Office is not a predecessor in interest to the individual

officers named as Defendants here.  *See Annunziata*, 2008 WL 2229903, at *8 (holding that the

district attorney's office was not the same party as, or in privity with, New York City or an

individual officer for purposes of Rule 804(b)(1)); *accord Hill v. City of Chicago*, No. 06-CV-

6772, 2011 WL 3876915, at *2 (N.D. Ill. Sept. 1, 2011) ("Defendant Officers argue that the

Assistant State's Attorney . . . was not their predecessor in interest because the prosecutor did

not have the same requisite stake in the criminal proceeding as Defendant Officers have in the

present civil rights lawsuit.  The Court agrees."); *cf. Robertson v. United States*, 130 S. Ct. 2184,

2188 (2010) (Roberts, C.J., dissenting) (explaining that "[o]ur entire criminal justice system is

premised on the notion that" a prosecutor appears as "the government," not as a "private

citizen"); *Jenkins v. City of New York*, 478 F.3d 76, 85–86 (2d Cir. 2007) (holding that police

14

detectives are not in privity with prosecutors, thus precluding application of collateral estoppel against detectives based on cases involving prosecutors).

Moreover, even if the prosecutor was a predecessor in interest, the prosecutor did not have the same motive to question Neal as Defendants do here, because, while the issue of whether Neal spoke with Defendants at the hospital is central to Plaintiff's false arrest claim, the prosecutor had little reason to focus on this issue at the criminal trial when Neal could testify regarding his first-hand observations of Plaintiff and his subsequent identification of Plaintiff from a photographic array and an in-person lineup. *See Annunziata*, 2008 WL 2229903, at *8 (finding that prosecutor did not have the same motive to cross-examine a witness as the defendants in the civil case because the issue was "of little, if any concern to the State" and the prosecutor had other evidence to support the criminal case (quoting *Hannah v. City of Overland*, 795 F.2d 1385, 1390-91 (8th Cir. 1986)); *Dukes v. City of New York*, 879 F. Supp. 335, 343 (S.D.N.Y. 1995) (noting, in discussing whether the defendants had a similar motive to question a witness in a prior criminal trial as in the current § 1983 case, that "it [was] not at all obvious to th[e] [c]ourt that defendants would have attempted to ascertain at [plaintiff's] criminal trial whether" witnesses were "available for interview by the police at the scene of the murder"); *see also United States v. DiNapoli*, 8 F.3d 909, 912 (2d Cir. 1993) (en banc) ("If a fact is critical to a cause of action at a second proceeding but the same fact was only peripherally related to a different cause of action at a first proceeding, no one would claim that the questioner had a similar motive at both proceedings to show that the fact had been established (or disproved)."); *accord Hill*, 2011 WL 3876915, at *3 ("[T]he motive of a prosecutor to cross-examine a witness is different than the motive of a defendant in a later-filed civil rights lawsuit in relation to the potential penalties or financial stakes involved."). As a result, Neal's prior testimony is not

15

admissible under the former testimony exception, and it cannot raise a genuine issue of fact regarding whether Defendants Skully and McCabe spoke to Neal at the hospital.  *See Velez v. SES Operating Corp.*, No. 07-CV-10946, 2009 WL 3817461, at *10 (S.D.N.Y. Nov. 12, 2009) (noting that the plaintiff "fail[ed] to create a triable issue of material fact" because, inter alia, evidence on which she relied was hearsay).[8]

### 4. Probable Cause to Arrest Based on Initial Interview with Neal

Plaintiff also argues that even if there is no dispute regarding whether Defendants spoke with Neal at the hospital prior to Plaintiff's arrest, this initial interview did not provide Defendants probable cause to arrest.  (Letter from Jon L. Norinsberg to Court ("Pl.'s Reply

---

[8] The Court also finds that Neal's former testimony is not sufficiently reliable to be admitted under the "residual exception" to the hearsay rules.  Pursuant to Federal Rule of Evidence 807, hearsay evidence may be admissible if "(i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice."  *United States v. Morgan*, 385 F.3d 196, 208 (2d Cir. 2004) (internal quotation marks omitted).  *See generally* Fed. R. Evid. 807 (requiring that the evidence have, inter alia, "equivalent circumstantial guarantees of trustworthiness" to be admissible).  Here, despite the fact that Neal's testimony was given under oath, it lacks equivalent guarantees of trustworthiness when the line of questioning was somewhat vague, there was *no* cross-examination on the issue of whether Neal spoke with Defendants at the hospital, and, as explained, the prosecutor had no reason to clarify the issue during the direct examination.  *See United States v. Jackson*, 335 F.3d 170, 179 (2d Cir. 2003) (declining to admit the defendant's plea allocution under either the former testimony or residual exceptions and noting that the allocution lacked equivalent guarantees of trustworthiness when it was not corroborated); *see also United States v. Zapata*, 356 F. Supp. 2d 323, 326-28 (S.D.N.Y. 2005) (declining to admit post-arrest statement that lacked circumstantial guarantees of trustworthiness); *cf. In re September 11th Litig.*, 621 F. Supp. 2d 131, 163 (S.D.N.Y. 2009) (admitting testimony of witnesses under residual exception, noting that they had "testified in court, before a jury, under oath and penalty of perjury, in a highly-scrutinized, public proceeding, regarding matters they were trained to perform"); *United States v. Salim*, 664 F. Supp. 682, 689 (E.D.N.Y. 1987) (admitting former testimony under residual hearsay exception when the witness was "subjected to what was in effect extensive cross-examination" though the use of written cross-examination questions).  As a result, the former testimony at issue here is not sufficiently reliable to be admissible under the residual hearsay exception.

Letter") 3-4 (Feb. 2, 2009)).  Plaintiff argues that Defendants should have doubted Neal's veracity because: he (1) "admitted that he 'did not get a good view of the suspect';" (2) "told police that he would 'probably not be able to identify the suspect';" (3) "delayed contacting the police for almost two weeks, despite seeing the suspect on three separate times following the robbery;" (4) "gave multiple and conflicting descriptions of both the suspect and the incident;" and (5) "refused to cooperate with the police, despite working" across the street from the precinct.  (Pl.'s Mem. 7.)

The Second Circuit has held that "police officers, when making a probable cause determination, are entitled to rely on the victim's allegations that a crime has been committed." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000); *see also Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that arrest of person may be proper "[w]hen information is received from a putative victim . . . unless the circumstances raise doubt as to the person's veracity"); *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed."), *aff'd*, 993 F.2d 1534 (2d Cir. 1993).  A sworn statement or signed complaint from the victim aids in establishing the victim's reliability, *see Singer*, 63 F.3d at 119 ("An arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."), but courts have consistently found probable cause to exist as a matter of law without a sworn statement when a putative victim gives his or her statement directly to an officer, *see Virgil v. Town of Gates*, 455 F. App'x 36, 38 (2d Cir. 2012) ("A victim's identification of an assailant is, by itself, sufficient probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."

17

(internal quotation marks omitted)); *Williams v. Schultz*, No. 06-CV-1104, 2008 WL 4635383, at *9 (N.D.N.Y. Oct. 16, 2008) (noting that while a sworn statement "may be sufficient . . . to corroborate a putative victim's veracity, such a sworn complaint is not necessary"); *Stokes v. City of New York*, No. 05-CV-007, 2007 WL 1300983, at *5 (E.D.N.Y. May 3, 2007) ("[T]he Second Circuit and other courts have found probable cause to exist where, in the absence of circumstances raising doubts as to the victim's veracity, the police received information directly from a purported victim of a crime without a formal written complaint.").  After receiving an apparently reliable complaint from a putative victim, officers are "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," *Martinez*, 202 F.3d at 635 (internal quotation marks omitted), nor are they "required to eliminate every possible line of impeachment that might apply to a victim complainant," *Koester v. Lanfranchi*, 288 F. App'x 764, 766 (2d Cir. 2008) (citing *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989)); *see also Awelewa v. New York City*, No. 11-CV-0778, 2012 WL 601119, at *3 (S.D.N.Y. Feb. 23, 2012) (same).

Here, as discussed above, Plaintiff has pointed to no admissible evidence disputing that Neal met with Defendants McCabe and Skully in person at the hospital, identified Plaintiff as his assailant, and provided a description of Plaintiff.  Indeed, all of the admissible evidence in the record shows that, prior to the arrest, Neal had provided an in-person description of the robbery and an identification of Plaintiff as the perpetrator to Defendants McCabe and Skully. (McCormick Aff. Ex. B, at 1 (police report stating that Defendants spoke with Neal "in the Human Resources Office" and that he told Defendants about the robbery and about seeing Plaintiff in the hospital); *id.* Ex. Z, at 18-21 (Defendant Skully's testimony that Defendants spoke to Neal for "five, seven minutes" at the hospital, that Neal told them about the robbery and

18

subsequent encounters with Plaintiff in the hospital, and that Neal provided a description of Plaintiff); *id.* Ex. AA, at 16 (Defendant McCabe's testimony that officers spoke with Neal at the hospital before they spoke with Beckford, that Neal told them he had been the "victim of a robbery," that he saw the "individual three separate times within the hospital," and that Plaintiff was "the person that robbed him"); Norinsberg Decl. Ex. I ¶ 9 (Beckford affidavit stating that Defendants spoke with Neal at the Human Resources office).)  Based on this in-person identification by the putative victim, Defendants McCabe and Skully had probable cause to arrest Plaintiff, unless they had reason to doubt Neal's veracity.  *See Jaegly*, 439 F.3d at 151-53 (affirming grant of summary judgment to officers as to plaintiff's false arrest claim, where victim orally told the officer of plaintiff's harassment, and where victim's description and plaintiff's statements partially corroborated the victim's identification); *Schultz*, 2008 WL 4635383, at *9 (noting that a putative victim's veracity may be corroborated by, inter alia, the putative victim's identification of an individual by "name and physical description"); *Daniels v. City of New York*, No. 03-CV-809, 2003 WL 22510379, at *3-4 (S.D.N.Y. Nov. 5, 2003) (dismissing plaintiff's false arrest claim because officers had probable cause when victim gave in-person description of assault to officers).

Plaintiff points to Defendant Chiarella's report to argue that Neal gave inconsistent statements and did not initially cooperate with the police.  (Pl.'s Reply Letter 3-4.)  However, it is undisputed that Defendants McCabe and Skully did not possess Defendant Chiarella's report prior to the arrest.  (Defs.' 56.1 Stmt. ¶ 16 (noting that Defendant Chiarella's report was written several days after Plaintiff's arrest); McCormick Aff. Ex. Z, at 35, 78, 80 (documenting Detective Skully's testimony that he did not see Detective Chiarella's report until well after Plaintiff's arrest).)  Therefore, these discrepancies are irrelevant because only information

19

known to Detectives McCabe and Skully at the time of the arrest can affect the probable cause

determination.  *See Devenpeck*, 543 U.S. at 153; *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.

2006) ("When determining whether probable cause exists courts must consider those facts

*available to the officer* at the time of arrest and immediately before it . . . ." (emphasis in

original) (internal quotation marks omitted)); *Rae v. County of Suffolk*, 693 F. Supp. 2d 217, 223

(S.D.N.Y. 2010) (same).[9]  Moreover, even if there is a factual dispute regarding whether

---

[9] The fact that Detectives Skully and McCabe were unaware of Detective Chiarella's report when they arrested Plaintiff (because it was not written until several days later) severely undercuts Plaintiff's efforts to impugn the validity of Defendants' decision to arrest Plaintiff. Nonetheless, in his Memorandum of Law opposing Defendants' Motion, Plaintiff repeatedly cites portions of Detective Chiarella's report and then selectively lifts portions of Detective Skully's testimony to suggest that Detectives Skully and McCabe were aware of the contents of this report and were troubled by the inconsistencies between Neal's statements to Detective Chiarella and those to Detectives Skully and McCabe.

For example, Plaintiff asserts that Detective Skully acknowledged that it would "raise doubts" about a complainant's veracity if a complainant were uncooperative with law enforcement officials, referring to the fact that Detective Chiarella (again, in a report that post-dated Plaintiff's arrest) noted that he was closing the file, because Neal had failed to come to the Detective Division to speak with Detective Chiarella.  Indeed, Detective Skully did agree that there might be doubts when a victim fails to cooperate with law enforcement officials. (McCormick Aff. Ex. Z, at 84.)  However, Detective Skully also testified that he had no such concerns in this case, because he felt that Neal and Detective Chiarella "had a bad rapport," and that was why he assigned Detective McCabe to handle the case going forward.  (*Id.* at 84-85.)

Plaintiff also asserts that Neal gave conflicting descriptions of the assailant, and that even Detective Skully suspected that Neal's later and more detailed descriptions might have been influenced by sightings of Plaintiff.  (Pl.'s Mem. at 10-11.)   In support of this claim, Plaintiff cites one sentence in Detective Skully's deposition, where he acknowledged that he felt that "there may [have] be[en] a chance that [Neal] was influenced [by his multiple sightings of Plaintiff]."  (McCormick Aff. Ex. Z, at 114.)  What Plaintiff fails to quote, however, is the later portion of Detective Skully's deposition where he said that based on this concern he spoke to Neal "at length" and felt, based on his experience, that Neil was "100 percent truthful," and was "an extremely credible witness."  (*Id.* at 112-13)  Thus, whatever possible questions there might have been about Neal's veracity, Detective Skully addressed them head-on in his discussions with Neal and concluded that Neal was credible.  While it is true that some of these conversations took place after Plaintiff's arrest, so too did the so-called discrepancies raised by Chiarella's report.  In any event, the undisputed evidence is that at the time Plaintiff was arrested, Defendant officers had no reason to doubt Neal's identification of Plaintiff as the assailant.

20

Defendant McCabe reviewed Officer Rodriguez's incident report prior to the arrest (Defs.' 56.1

Stmt. ¶ 13 (stating that Defendant McCabe reviewed the report prior to the arrest); McCormick

Decl. Ex. AA, at 22 (stating that Defendant McCabe reviewed Rodriguez's report "[p]robably

after" he returned to the Detective Division)), this minor inconsistency that Plaintiff points to is

insufficient to defeat probable cause, especially when that report noted that Neal "may be able to

identify the suspect," (McCormick Decl. Ex. A).  *See Drummond*, 522 F. Supp. 2d at 675

(finding that defendants had probable cause despite inconsistencies in victim's "statements

regarding the events surrounding the crime and the identity of the shooter"); *Frey v. Maloney*,

476 F. Supp. 2d 141, 153 (D. Conn. 2007) (noting that although plaintiff argued that the victim

gave statements inconsistent with her own and other witnesses' prior statements, "[i]t is not

unusual for witnesses to criminal conduct to recall details differently or give differing versions

of the events"); *see also Gisondi v. Town of Harrison*, 528 N.E.2d 157, 160 (N.Y. 1988) (noting

that "[i]n any investigation the police are likely to encounter discrepancies," that "may impair

their ability to prove guilt beyond a reasonable doubt," but that "have little bearing [on] . . .

whether there is sufficient evidence to show probable cause to believe the defendant committed

the crime"); *cf. Jovanovic v. City of New York*, No. 04-CV-8437, 2006 WL 2411541, at *8

(S.D.N.Y. Aug. 17, 2006) (finding plaintiff had sufficiently alleged false arrest claim where

plaintiff asserted that defendant officer "fabricated evidence, destroyed evidence favorable to the

defense, and offered false testimony to the grand jury").[10]   Finally, although Plaintiff argues that

---

[10] In addition, Plaintiff argues that Neal told Officer Rodriguez that he was attacked from
behind, but told Defendants Skully and McCabe that he saw a suspicious person across the
street.  (Pl.'s Mem. 11.)  However, the fact that Neal initially stated he was attacked from behind
is not inconsistent with his later statement that he saw someone across the street and then was
attacked from behind.  Although Plaintiff argues that Neal also provided new details about the
attacker to Defendants McCabe and Skully, such as that the attacker had a tattoo or mole and

Defendants should have investigated further after speaking to Neal at the hospital, Defendants were not required to explore every possible avenue of investigation once they had probable cause to arrest. *See Rae*, 693 F. Supp. 2d at 224 ("[T]he probable cause standard does not require that the arresting officer affirmatively seek out reasons to doubt the victim or a witness where none are apparent." (internal quotation marks omitted)); *see also Koester*, 288 F. App'x at 766 (noting that "an officer is not required to eliminate every possible line of impeachment that might apply to a victim complainant"); *Curley*, 268 F.3d at 70 ("Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him."). Accordingly, the Court agrees with Magistrate Judge Smith that Defendants McCabe and Skully had probable cause to arrest Plaintiff based on Neal's statements at the hospital, and Defendants' Motion for Summary Judgment on this issue is granted.

### 5. Qualified Immunity

Even if the Court were to find that there are material questions of fact as to probable cause, qualified immunity would still shield Defendants from liability. "Qualified immunity

---

bony hands, (*id.* at 10-11), there is no evidence that Defendants were aware of Neal's previous description prior to the arrest. To the contrary, Officer Rodriguez's one paragraph report does not contain a description of the attacker from Neal. (McCormick Aff. Ex. A.)

Additionally, although Plaintiff places much weight on the fact that Neal did not report his first two sightings of Plaintiff in the cafeteria to the police, it is not unreasonable for a victim to want to verify his suspicion before reporting the person to the police. (*Id.* Ex. L, at 17.) Nor is it unreasonable that Neal's initial statements, given soon after the attack, slightly differ from those later given to Detectives McCabe and Skully, (McCormick Aff. Ex. Z, at 112 (stating that in Skully's experience, victims giving statements in a hospital after an attack do not give complete descriptions of perpetrators because "they are more focused on their injuries").) *See Newton v. City of New York*, 640 F. Supp. 2d 426, 446 (S.D.N.Y. 2009) (noting that inconsistency in victim's information could be explained by the "shock" of the attack itself, "rather than [by] deficient memory").

protects officials from liability for civil damages as long as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Gilles v. Repicky*, 511 F.3d 239, 243 (2d Cir. 2007) (internal quotation marks omitted).  In the

false arrest context, qualified immunity shields an officer if the officer had "'arguable' probable

cause" to arrest.  *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007).  Arguable probable

cause exists when "'a reasonable police officer in the same circumstances and possessing the

same knowledge as the officer in question *could* have reasonably believed that probable cause

existed in the light of well established law.'"  *Id.* (emphasis in original) (quoting *Cerrone v.

Brown*, 246 F.3d 194, 202-03 (2d Cir. 2001)); *see also Escalera v. Lunn*, 361 F.3d 737, 743 (2d

Cir. 2004) ("Arguable probable cause exists if either (a) it was objectively reasonable for the

officer to believe that probable cause existed, or (b) officers of reasonable competence could

disagree on whether the probable cause test was met." (internal quotation marks omitted)).

Thus, to determine whether the officer acted with arguable probable cause, "[a] court must

evaluate the objective reasonableness of the [officers'] conduct in light of . . . the information

the . . . officers possessed."  *Cerrone*, 246 F.3d at 202 (fourth alteration in original) (internal

quotation marks omitted).

Here, even if Defendants lacked probable cause as a matter of law, because of potential

inconsistencies in Neal's story or other reasons to doubt his veracity, reasonable officers could

differ as to whether the victim's in-person identification of Plaintiff nonetheless provided

probable cause.  *See Parisi v. Suffolk County*, No. 04-CV-2187, 2009 WL 4405488, at *9

(E.D.N.Y. Nov. 30, 2009) ("[T]here can be no doubt that, at a minimum, officers of reasonable

competence could disagree on whether there was probable cause to arrest [the plaintiff] on the

simple accusation of the claimed victim alone . . . ."); *Little v. Massari*, 526 F. Supp. 2d 371,

376, 377-78 (E.D.N.Y. 2007) (finding that arresting officer had at least arguable probable cause to arrest plaintiff based on victim's complaints, despite plaintiff's argument that the officer should have known that the alleged victim had a motive to lie); *see also Escalera*, 361 F.3d at 746 ("[T]he question is not whether there were discrepancies, even substantial discrepancies, between the victim's accounts, but whether officers of reasonable competence could disagree on whether the probable cause test was met.").[11]  As a result, Defendants at least had arguable probable cause to arrest Plaintiff, and they are shielded by qualified immunity.

Accordingly, Plaintiff has not raised genuine issues of material fact regarding qualified immunity and Defendants' Motion for Summary Judgment is granted.

C. Malicious Prosecution

"A § 1983 claim for malicious prosecution requires the plaintiff to 'demonstrate conduct by the defendant that is tortious under state law and that results in a constitutionally cognizable deprivation of liberty.'"  *Rae*, 693 F. Supp. 2d at 226 (quoting *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)).  Malicious prosecution under New York law requires a plaintiff to show "four elements.  First, the plaintiff must prove that the defendant initiated a criminal proceeding. Second, the proceeding must have been terminated favorably to the plaintiff.  Third, the plaintiff must prove that there was no probable cause for the criminal charge.  Finally, the defendant must have acted maliciously."  *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004); *Bernard v. United States*, 25 F.3d 98, 104 (2d Cir. 1994) (same).  "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York."  *Manganiello v. City of*

---

[11] The Defendants' motivation to arrest Plaintiff "is irrelevant to the question of probable cause."  *Lee v. Sandberg*, 136 F.3d 94, 103 n.5 (2d Cir. 1997).  "The standard is not a subjective one."  *Id.*  Therefore, Plaintiff's theory that Defendants arrested him because of pressure from Neal's uncle does not affect the analysis.  *See id.*

*New York*, 612 F.3d 149, 161-62 (2d Cir. 2010) (alteration in original) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).  "Where . . . probable cause existed for the arrest itself, a plaintiff pursuing a malicious prosecution claim must establish that probable cause somehow 'dissipated' between the time of arrest and the commencement of the prosecution." *Johnson v. City of New York*, No. 08-CV-5277, 2010 WL 2292209, at *6 (S.D.N.Y. June 7, 2010).  "In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996).

   A grand jury indictment creates a presumption of probable cause.  *See Ambrose v. City of New York*, 623 F. Supp. 2d 454, 476 (S.D.N.Y. 2009) (noting that a grand jury indictment creates a "presumption that [a] prosecution was supported by probable cause").  However, a plaintiff may rebut the presumption of probable cause by showing that police witnesses did not make "a complete and full statement of facts" to the grand jury or that they "misrepresented or falsified evidence or otherwise acted in bad faith."  *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) (ellipsis and internal quotation marks omitted); *see also Parisi*, 2009 WL 4405488, at *10 (same).

### 1. Relevance of Disputed Arrest Location and *Boyd*

   Plaintiff first objects to the R&R by arguing that he has overcome the presumption of probable cause, because Defendants Skully and McCabe lied about the arrest location in order to obtain the indictment.  (Obj. 5.)  Plaintiff argues that Magistrate Judge Smith did not address the applicability of *Boyd v. City of New York*.  (*Id.*)  In *Boyd*, a factual dispute existed regarding whether the plaintiff was arrested before he uttered incriminating statements without being given the *Miranda* warnings.  336 F.3d at 74, 77.  The Second Circuit held that summary judgment on

the malicious prosecution claim was inappropriate, because the plaintiff had presented evidence that the officers lied about the arrest location and timing "in order to secure the indictment" and because a jury could, therefore, reasonably find that "the indictment was secured through bad faith or perjury." *Id.* at 77.  In other words, the disputed arrest location was critical to the probable cause determination in *Boyd* because if plaintiff's version of the arrest was true, the incriminating statements would have been inadmissible at trial and could not have been used to substantiate probable cause to prosecute.  *See id.*; *see also Parisi*, 2009 WL 4405488, at *10 (noting that the central factual dispute in *Boyd* involved whether the incriminating statements that gave rise to probable cause were made after plaintiff's arrest).

Plaintiff's reliance on *Boyd* is misplaced.  Unlike in *Boyd*, where the factual dispute over the arrest location raised doubts regarding whether the incriminating statements that established the probable cause for the prosecution were admissible, the factual dispute over the arrest location in this case raises no similar problem.  Here, even though Plaintiff raised a disputed issue of fact regarding whether Defendants obtained Neal's detailed factual account and identification of Plaintiff prior to arrest, it is undisputed that Defendants had this evidence prior to seeking the indictment of Plaintiff.  (Defs.' 56.1 Stmt. ¶¶ 13-14, 18-19.)  And, unlike the incriminating statements of the arrested plaintiff in *Boyd*, Neal's statements and identifications could be used to establish probable cause to prosecute regardless of whether the evidence was obtained after Plaintiff's arrest.  Put another way, the timing of Plaintiff's arrest here was immaterial, because the timing of the *victim's* statements and identification were immaterial to the grand jury's determination of whether to return an indictment.  *See Hill v. Melvin*, No. 05-CV-6645, 2006 WL 1749520, at *15 (S.D.N.Y. June 27, 2006) (granting summary judgment on malicious prosecution claim when plaintiff failed to rebut grand jury presumption of probable

cause because, despite evidence that officers planted evidence, plaintiff failed to show that

officers lied about the evidence to the grand jury); *see also Richardson v. City of New York*, No.

02-CV-3651, 2006 WL 2792768, at *7 n.4 (E.D.N.Y. Sept. 27, 2006) (noting that in order to

overcome the presumption of probable cause, "the alleged fabrication [of evidence] must

be . . . material, i.e., 'likely to influence a jury's decision'" (quoting *Ricciuti v. N.Y.C. Transit

Auth.*, 124 F.3d 123, 130 (2d Cir. 1997))).[12]   Moreover, Plaintiff has presented no evidence that

Defendants McCabe or Skully testified at the grand jury, and thus he fails to support his

conclusory allegation that the indictment was procured through their alleged perjury,

(McCormick Aff. Ex. L (showing that only Neal and Defendant Chiarella testified before the

grand jury)).   *See Hill*, 2006 WL 1749520, at *15 (finding that allegations of perjury did not

overcome presumption of probable cause when plaintiff did not show that defendants testified

---

[12] Indeed, it is clear from Plaintiff's objections that he confuses the probable cause needed for his arrest with the probable cause needed for his prosecution.  (Obj. 6 n.2 (arguing that Defendants bad faith is established by their lying about Plaintiff's arrest location "to utilize the evidence which they obtained at the precinct—i.e. *after* the arrest—to support their warrantless arrest of plaintiff" (emphasis in original)).)  Probable cause for malicious prosecution "is measured at a different point in time" from probable cause for false arrest:  It is measured "as of the time the judicial proceeding is commenced . . ., not the time of the preceding warrantless arrest." *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000); *see also Singer*, 63 F.3d at 117 ("[A] warrantless deprivation of liberty from the moment of arrest to the time of arraignment will find its analog in the tort of false arrest, . . . while the tort of malicious prosecution will implicate post-arraignment deprivations of liberty." (internal citations omitted)).  Thus, "information discovered . . . after the arrest, but before the commencement of proceedings, is relevant to the determination of probable cause" for the prosecution. *Mejia*, 119 F. Supp. 2d at 254.  This distinction is critical here because, as explained, while Defendants cannot rely on Neal's detailed written statement and photographic identification to support probable cause to arrest, they may use this information, acquired after Plaintiff's arrest and before the criminal information was filed, to support probable cause to prosecute.  Moreover, Plaintiff has not identified any evidence relied on by Defendants to seek Plaintiff's indictment that was somehow tainted by Plaintiff's arrest at the hospital, as opposed to his being arrested later at the Detective Division.

before grand jury); *cf. McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006) (denying summary judgment because reasonable juror could find that indictment was procured through perjury when, inter alia, the defendant testified at the grand jury and provided different "variations" of the incident).

### 2. Alleged Failure to Make Complete Statement of Facts

Plaintiff argues that Magistrate Judge Smith applied an improper standard to his malicious prosecution claim by requiring that he show that exculpatory information was withheld from the grand jury. (Obj. 10.) Plaintiff further argues that Defendant Chiarella failed to make a complete statement of the facts to the grand jury by failing to testify that: (1) Neal had originally stated that he "would not be able to identify" his attacker; (2) Neal had failed to report his sightings of Plaintiff in the hospital to the police; (3) Neal had refused to come to the police precinct to view a photographic array at Defendant Chiarella's request; and (4) Defendant Chiarella had closed out his investigation because Neal was not cooperating. (*Id.* (internal quotation marks omitted).)

As already noted above, it is clear that under New York law the grand jury presumption of probable cause may be overcome if "police witnesses have not made a complete and full statement of facts" to the grand jury. *Boyd*, 336 F.3d at 76 (internal quotation mark omitted); *see also Richards v. City of New York*, No. 97-CV-7990, 2003 WL 21036365, at *14 (S.D.N.Y. May 7, 2003) (same). However, as Magistrate Judge Smith noted, the law is equally clear that prosecutors need not "present all of their evidence tending to exculpate the accused." *Williams v. City of New York*, No. 02-CV-3693, 2003 WL 22434151, at *7 (S.D.N.Y. Oct. 23, 2003) (quoting *People v. Mitchell*, 626 N.E.2d 630, 633 (N.Y. 1993)), *aff'd,* 120 F. App'x 388 (2d Cir. 2005); *see also Parisi*, 2009 WL 4405488, at *10 ("The simple act of not disclosing to the grand

28

jury all evidence that could potentially benefit the accused at a grand jury hearing does not necessarily rise to the level of bad faith.").  "[T]he police . . . cannot be said to have improperly concealed evidence every time the plaintiff is able to show that they could have done more or could have disclosed more.  What is required is proof that the police conduct deviated egregiously from statutory requirements or accepted practices applicable in criminal cases." *Parisi*, 2009 WL 4405488, at *10 (internal quotation marks omitted); *see also Zahrey v. City of New York*, No. 98-CV-4546, 2009 WL 54495, at *17 (S.D.N.Y. Jan. 7, 2009) ("[A] decision not to present arguable exculpatory evidence does not amount to conduct undertaken in bad faith." (brackets and internal quotation marks omitted)).

        For example, in *Williams*, the victim initially had failed to identify the plaintiff from a photographic array presented at the scene of the crime.  2003 WL 22434151, at *1, 7.  Despite this initial failure, the victim later identified the plaintiff from a computer generated image at the police precinct, and the officers commenced plaintiff's prosecution after the positive identification.  *Id.* at *2.  The court rejected the plaintiff's claim that the grand jury presumption of probable cause was overcome by the officers' failure to tell the grand jury about the victim's failed identification, because this information was not "central to [plaintiff's] criminal innocence" and did "not go to the heart of probable cause."  *Id.* at *7; *see also Dukes*, 879 F. Supp. at 342-43 (finding that defendants' failure to interview potential witnesses did not deviate egregiously from accepted practices, especially when one witness identified the plaintiff from a lineup after his arrest).  Similarly, courts routinely find that the grand jury presumption is not overcome by a failure to disclose conflicting eyewitness accounts or minor discrepancies in a purported victim's statements.  *See Parisi*, 2009 WL 4405488, at *11 (noting that inconsistencies in victim's statements did not "establish the existence of a material disputed fact

29

that the prosecution was groundless"); *Richards*, 2003 WL 21036365, at *17 (noting that discrepancies in witnesses' statements would not undermine the probable cause determination, but that withholding information showing that the key eyewitness identified a different suspect could).  In other words, the law distinguishes between information that might call into question a witness's reliability—i.e., inconsistent statements—and information tending to demonstrate that the witness identified somebody other than the accused as the perpetrator.  *See Richards*, 2003 WL 21036365, at *17.

As an initial matter, Plaintiff's claim that Defendant Chiarella failed to disclose to the grand jury that Neal had not initially reported his sightings of Plaintiff in the hospital to the police is immaterial, as this information was clearly disclosed to the grand jury, (McCormick Aff. Ex. L, at 16-17 (showing that Neal testified to the grand jury that he did not initially contact the police)).  *See Dawkins v. Williams*, 511 F. Supp. 2d 248, 251-52 (N.D.N.Y. 2007) (noting that an officer's failure to reference particular evidence in felony complaint did not rebut the presumption of probable cause because the evidence was not withheld and was part of the record).  In any event, the Court agrees with Magistrate Judge Smith that this purported omission, if true—even along with the other alleged omissions—does not rise to the level of egregious deviations from statutory requirements or accepted practices required to overcome the grand jury presumption.  Defendant Chiarella's omission of his report, which noted that Neal stated that he "would probably not be able to identify" his attacker, or of Neal's initial reluctance to cooperate, were not egregious omissions considering Neal's subsequent, repeated identifications of Plaintiff.  *See Gaston v. City of New York*, 851 F. Supp. 2d 780, 788 (S.D.N.Y. 2012) (finding that victim's identification of attacker in a photo array and in a lineup established probable cause); *Zahrey*, 2009 WL 54495, at *16-17 & n.34 (finding that defendants' failure,

inter alia, to present the grand jury with inconsistent statements by cooperating witness was insufficient to undermine probable cause); *Williams*, 2003 WL 22434151, at \*7 (noting that officers' failure to tell the grand jury about victim's initial failure to identify the plaintiff "in a photo display [fell] short of the required showing of fraud, perjury, or bad faith [needed] to overcome the presumption of probable cause"); *Richards*, 2003 WL 21036365, at \*16 ("In any investigation the police are likely to encounter discrepancies, particularly in cases involving eyewitness identification," but the "police and prosecutors . . . are not generally required to disclose all discrepancies or potential weaknesses in the case uncovered during the investigation." (quoting *Gisondi*, 528 N.E.2d at 160)).[13]  Accordingly, the Court agrees with Magistrate Judge Smith that Plaintiff has failed to raise a genuine issue of material fact regarding whether Defendant Chiarella made a full statement of facts to the grand jury.

### 3. Alleged Failure to Make Further Inquiry

Plaintiff further objects to Magistrate Judge Smith's recommendation by arguing that she did not address whether the grand jury presumption was overcome by Defendants' alleged failure to further investigate the matter.  (Obj. 6-9.)  Plaintiff is correct that "[t]he New York Court of Appeals has noted that 'the failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause'" to prosecute.  *Lowth*, 82 F.3d at 571 (quoting *Colon v. City of New York*, 455 N.E.2d 1248, 1250 (N.Y. 1983)); *see also Parisi*, 2009 WL 4405488, at \*11 (same).  However, "'the police are not obligated to pursue every lead that may yield evidence beneficial to the accused,'" *Parisi*, 2009 WL 4405488, at \*11 (quoting

---

[13] Furthermore, Plaintiff's argument that Defendant Chiarella's report undermines probable cause is belied by Defendant Chiarella's earlier interview notes, which state that Neal told Defendant Chiarella that he got a "decent" look at his attacker's face and that he may or may not be able to identify the attacker.  (McCormick Aff. Ex. C.)

*Gisondi*, 528 N.E.2d at 160), and the inquiry is whether the investigation "so far departed from what a reasonable person would have undertaken as to itself constitute evidence of lack of probable cause," *Rae*, 693 F. Supp. 2d at 227; *see also Colon*, 455 N.E.2d at 1251 (noting that although "further avenues of investigation were open to the police," such as asking witnesses to identify the victim's body, defendants' failure to pursue those avenues was "not the equivalent of fraud or the suppression of evidence" as required for a showing of malicious prosecution).

First, Defendant Chiarella's allegedly deficient initial investigation does not overcome the presumption, when it is undisputed that Neal subsequently contacted the police and provided a detailed written statement and photographic identification of Plaintiff (which the police found to be credible), and that Defendants obtained and reviewed Officer Rodriguez's incident report, (Defs.' 56.1 Stmt. ¶¶ 11-13). *See Rae*, 693 F. Supp. 2d at 227 (finding that alleged failure to investigate was insufficient to undermine probable cause when the defendants "gathered additional evidence [including an interview with the alleged victim] . . . between the time of [the plaintiff's] arrest and the grand jury presentation"). Furthermore, even accepting Plaintiff's claim that there is a factual dispute regarding whether Defendants interviewed the two nonvictim witnesses to the robbery, the mere failure to interview potential witnesses does not overcome the presumption of probable cause. *See Parisi*, 2009 WL 4405488, at *12 (finding that officers' alleged failure to locate and interview potential witnesses did not overcome probable cause); *see also Dukes*, 879 F. Supp. at 342-43 (finding that failure to interview potential witnesses did not undermine probable cause). Additionally, Plaintiff's claim that inconsistencies in Neal's statements required Defendants to further investigate the matter is wholly without merit, as such inconsistencies generally do not show a lack of probable cause. *See Parisi*, 2009 WL 4405488, at *11 (noting that the "existence of some inconsistencies in statements of the victim" did not

"dissipate probable cause" and that criminal defendants are protected by their ability at trial to cross-examine witnesses who make inconsistent statements); *see also Rae*, 693 F. Supp. 2d at 226-27 (noting that alleged failure to investigate rape victim's relationship with alleged perpetrator and to pursue other avenues of investigation did not undermine probable cause).  In sum, Plaintiff has not raised a genuine issue of material fact regarding whether Defendants' alleged investigative failures "so far departed from what a reasonable person would have undertaken as to . . . constitute evidence of lack of probable cause." *Rae*, 693 F. Supp. 2d at 227.

### 4. Qualified Immunity

"The standard for qualified immunity from a malicious prosecution claim is the same as that for false arrest: an arresting officer 'is entitled to qualified immunity if (a) it was objectively reasonable for the officer to believe that probable cause existed or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Ullah v. Office of the Dist. Attorney*, No. 07-CV-2687, 2009 WL 2151357, at *4 (S.D.N.Y. July 20, 2009) (quoting *O'Neill v. Town of Babylon*, 986 F.2d 646, 649-50 (2d Cir. 1993)).  "Probable cause, in the context of malicious prosecution, has . . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd*, 336 F.3d at 76; *see also Rueda v. Kreth*, No. 01-CV-2819, 2005 WL 323711, at *5 (E.D.N.Y. Feb. 7, 2005) ("In the context of a claim of malicious prosecution, probable cause focuses on a belief that criminal charges could be successfully prosecuted.").

Here, even if Plaintiff's claims were sufficient to overcome the grand jury presumption of probable cause, Defendants would be entitled to qualified immunity, because reasonable officers could at least disagree about whether probable cause to prosecute existed.  Importantly, it is undisputed that Defendants obtained Neal's sworn written statement describing the events

33

and photographic identification of Plaintiff prior to initiating the prosecution.  Defendants

therefore had at least arguable probable cause to believe that a prosecution against Plaintiff

would succeed.  *See Gaston*, 851 F. Supp. 2d at 795-96 (granting summary judgment on

qualified immunity grounds, because victim's identification of assailant in photo array and

lineup established arguable probable cause); *Lucky v. City of New York*, No. 03-CV-1983, 2004

WL 2088557, at *6 (S.D.N.Y. Sept. 20, 2004) (noting that victim's identification of plaintiff as

his attacker in a lineup established probable cause to prosecute).  As a result, Defendants are

protected by qualified immunity, and Defendants' Motion for Summary Judgment regarding the

malicious prosecution claim is granted.[14]

D. Abuse of Criminal Process

A plaintiff alleging abuse of process must show that defendant:  "(1) employs regularly

issued legal process to compel performance or forbearance of some act[,] (2) with intent to do

harm without excuse or justification, and (3) in order to obtain a collateral objective that is

outside the legitimate ends of the process."  *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994); *see*

*also Batson-Kirk v. City of New York*, No. 07-CV-1950, 2009 WL 1505707, at *10 (E.D.N.Y.

May 28, 2009) (same).

---

[14] Because the Court finds that all Defendants had at least arguable probable cause to
prosecute Plaintiff, the Court need not address Magistrate Judge Smith's recommendation to
dismiss the malicious prosecution claims against Defendants McCabe and Skully for lack of
personal involvement in initiating the prosecution.  (R&R 23.)

### 1. Standards for Abuse of Process Claim

Plaintiff first claims that Magistrate Judge Smith erroneously applied a "malice" requirement to his abuse of process claim.  (Obj. 11.)[15]  Contrary to Plaintiff's contention, Magistrate Judge Smith correctly noted that abuse of process claims arise when a defendant causes legal process to issue for an unjustified collateral purpose, (R&R 21-22).  *See Savino*, 331 F.3d at 77 (noting that "malicious motive alone does not give rise to" an abuse of process claim and that a plaintiff must show that the defendants "aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution" (ellipsis and internal quotation marks omitted)); *Batson-Kirk*, 2009 WL 1505707, at *11 ("[A] plaintiff [alleging abuse of process] must prove not that defendant acted with an improper motive, but rather an improper purpose—that is, he [or she] must claim that [defendant] aimed to achieve a collateral purpose beyond or in addition to his [or her] criminal prosecution." (fourth alteration in original)).  For example, courts have found malicious abuse of process claims to be properly based on such improper purposes as a desire to safeguard one's employment, *see Douglas v. City of New York*, 595 F. Supp. 2d 333, 344 (S.D.N.Y. 2009), a desire to escape blame for allowing a suspect to go free, *see Richardson*, 2006 WL 2792768, at *7, or a desire to intimidate or embarrass plaintiff, *see Granito v. Tiska*, 181 F. Supp. 2d 106, 118 (N.D.N.Y. 2001).  Accordingly, despite Magistrate Judge Smith noting that Plaintiff may have conflated the malice and collateral objective requirements, (R&R 22 n.5),

---

[15] The Court notes that Plaintiff's Amended Complaint asserts claims for false arrest and malicious prosecution, (Amend. Compl. ¶¶ 42-62), but it does not specifically allege abuse of process.  For this reason alone, the Court would be justified in dismissing Plaintiff's claim.  *See Hernandez v. Wells*, No. 01-CV-4376, 2003 WL 22771982, at *3 (S.D.N.Y. Nov. 24, 2003) (dismissing false arrest claim that was not asserted in the amended complaint).  In any event, for the reasons discussed below, Plaintiff's claim is without merit, and the Court adopts Magistrate Judge Smith's recommendation to dismiss Plaintiff's claim.

there is no merit to Plaintiff's contention that Magistrate Judge Smith applied an improper malice standard.

### 2. Collateral Objective

Plaintiff next argues at length that Magistrate Judge Smith did not consider Nicole Beckford's incident report, (Obj. 13-14), which stated that Neal "called his uncle who is NYPD, who called Detective Sergeant Skully," (Norinsberg Decl. Ex. I), or Defendant Skully's testimony that an NYPD officer called him several months after Plaintiff's arrest, (Obj. 15-16).

Even accepting, *arguendo*, that Nicole Beckford's statement regarding the phone calls is admissible, which is questionable, and that Plaintiff has at least raised a disputed issue regarding whether Neal's uncle called Defendant Skully, Plaintiff's abuse of process claims fails for far more fundamental reasons.  First, Plaintiff has offered *no* proof that Neal's uncle exerted any "pressure" on Defendant Skully.  Nicole Beckford's incident report, on which Plaintiff principally relies, simply states that Neal "called his uncle who is NYPD, who called Detective Sergeant Skully."  (Norinsberg Decl. Ex. I.)  Nothing in this report, or in any of the other evidence submitted by the Parties, even suggests that Neal's uncle exerted any pressure on Defendants or did anything other than inform a fellow officer that his nephew believed he had identified his attacker.[16]  Without offering *any* evidence that Neal's uncle exerted any pressure on Defendants, Plaintiff has failed to raise a genuine issue of material fact regarding the collateral objective prong, because he cannot overcome Defendants' Motion on mere conjecture and surmise.  *See Blake v. Race*, 487 F. Supp. 2d 187, 218 n.22 (E.D.N.Y. 2007) (finding that

_____

[16] In fact, it bears mention that nothing in Defendant Skully's testimony regarding a phone call he received from an NYPD officer several months after Plaintiff's arrest raises an inference (as distinguished from speculation) that the caller put any pressure on Defendant Skully to prosecute Plaintiff.  (McCormick Aff. Ex. Z, at 101-03.)

plaintiff's suggestion that the defendant officers had a collateral objective of deterring him from filing a civil rights lawsuit was insufficient to defeat summary judgment when the plaintiff "failed to point to any evidence in the record that supports this theory of collateral objective"); *Dawkins*, 511 F. Supp. 2d at 252-53 (noting that a victim's friendship with the defendant officer's partner did not alone show any bad faith on the part of the defendant for purposes of a malicious prosecution claim); *cf. Hernandez v. Wells*, No. 01-CV-4376, 2003 WL 22771982, at *8-9 (S.D.N.Y. Nov. 24, 2003) (finding that the plaintiff had raised a genuine issue of material fact regarding the defendant's collateral objective of keeping his job, because evidence showed that the defendant had previously been warned that he would be fired if he violated any rules).

Furthermore, the only inference that Plaintiff requests be drawn from this alleged phone call, or that could reasonably be drawn, is that Defendants were "pressured" or "influenced" to arrest and prosecute Plaintiff.  (Amend. Compl. ¶ 23; Pl.'s Mem. 25; Obj. 12.)[17]  However, an augmented "motive" to arrest and prosecute is not an improper collateral objective.  As the Second Circuit explained in *Savino*, "a malicious motive alone" does not support an abuse of process claim because a plaintiff "must claim that [defendants] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."  331 F.3d at 77 (internal quotation mark omitted); *see also Burke v. Cicero Police Dep't*, No. 07-CV-624, 2010 WL 1235411, at *9 (N.D.N.Y. Mar. 31, 2010) (noting that "plaintiff must allege that the process that the defendants

---

[17] Although Magistrate Judge Smith noted that a desire to "escape scrutiny and criticism" might not be an improper collateral objective, the Court need not reach this question, because Plaintiff makes no allegation in his Amended Complaint that Defendants had such a collateral objective.  (Amend. Compl. ¶ 23 alleging that "[a]fter receiving pressure from a detective in the New York City Police Department, who was a relative of the complainant, the Yonkers Police Department decided to reopen [Plaintiff's] case").)  Nor could a reasonable jury draw any such inference from the bare allegation that an officer from a different police department called Detective Skully.

issued was improperly used after it was issued, not merely that the defendants acted with malice in bringing the action"); *Stewart v. City of New York*, No. 06-CV-15490, 2008 WL 1699797, at *9 (S.D.N.Y. Apr. 9, 2008) ("[T]o prevail on [a] malicious abuse of process claim, [plainitff] must establish that [defendant] sought to bring about a collateral objective separate and distinct from any malicious intent to initiate proceedings against him [or her].").  As a result, Plaintiff's claim that Defendants were motivated to prosecute Plaintiff by pressure from Neal's uncle to arrest and prosecute a suspect fails to raise a genuine issue of material fact regarding whether Defendants had a *collateral* objective other than the objective to prosecute Plaintiff.  *See Savino*, 331 F.3d at 77-78 (finding that allegation that defendants were motivated to prosecute the plaintiff because of a desire to retaliate was insufficient to support an abuse of process claim when there was no evidence that defendants "had an ulterior *purpose* or *objective* in facilitating [the] prosecution" (emphasis in original)); *see also Burke*, 2010 WL 1235411, at *9 (finding that alleged motivation to arrest and prosecute plaintiff because she had refused to allow the officer defendants to search her home failed to raise disputed issue of fact regarding whether officers had a collateral objective).[18]  Accordingly, Defendants' Motion for Summary Judgment on

---

[18] Moreover, several courts in the Second Circuit have held that "[w]hile a lack of probable cause is not explicitly an element of an abuse of process claim, the presence of probable cause negates a claim for abuse of process," because it provides an excuse or justification for the prosecution.  *Sforza v. City of New York*, No. 07-CV-6122, 2009 WL 857496, at *17 (S.D.N.Y. Mar. 31, 2009); *see also Pierre v. City of New York*, No. 05-CV-5018, 2007 WL 2403573, at *12 (E.D.N.Y. Aug. 17, 2007) ("[U]nder New York law, a showing of probable cause at the time process issued suffices to establish excuse or justification for the purposes of a defense to abuse of process." (ellipsis and internal quotation marks omitted)); *Berman v. Silver, Forrester & Schisano*, 549 N.Y.S.2d 125, 127 (App. Div. 1989) (upholding summary judgment on abuse of process claim because plaintiffs "failed to demonstrate that the defendants intended to harm them" when "the defendants had probable cause to commence the prior action").  However, some courts have held that "alleging lack of probable cause is unnecessary in a cause of action for abuse of process," because the tort involves the abuse of process after it is legally issued.  *VanZandt v. Fish & Wildlife Serv.*, 524 F. Supp. 2d 239, 248

38

Plaintiff's abuse of process claim is granted.[19]

### III. Conclusion

For the reasons stated above, Defendants' Motion for Summary Judgment is granted.

The Clerk of the Court is respectfully requested to terminate the pending Motion, (Dkt. No. 43),

enter judgment for Defendants, and close this case.

SO ORDERED.

Dated:      March 22, 2013
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

(W.D.N.Y. 2007); *see also* Restatement (Second) of Torts § 682 (noting that "it is immaterial [to an abuse of process claim] that the process was properly issued[] [or] that it was obtained in the course of proceedings that were brought with probable cause"). Because Plaintiff has failed to raise a genuine issue of material fact with regard to the collateral objective prong, the Court need not resolve this ambiguity here. However, the Court reiterates that Defendants had probable cause to believe Plaintiff was guilty based on Neal's detailed description of the events and positive identification of Plaintiff from a photographic array. *See Pierre*, 2007 WL 2403573, at *12 (granting defendants' summary judgment motion regarding plaintiffs' abuse of process claim "because defendants had probable cause—and thus, 'excuse or justification'—to prosecute plaintiffs").

[19] The Court notes that Plaintiff's Amended Complaint also asserts claims, pursuant to § 1983, for violations of his First, Fifth, and Eighth Amendment rights. (Am. Compl. ¶ 2.) Plaintiff has not responded to Defendants' argument that these claims must be dismissed, because the proper source of the claims described by Plaintiff is the Fourth Amendment. (Defs.' Mem. 18.) Because Plaintiff has produced no evidence nor made any argument to support these other claims, the Court deems them to have been abandoned, and grants Defendants' Summary Judgment Motion as to them. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.*, 212 F. Supp. 2d 233, 249 (S.D.N.Y. 2002) (dismissing plaintiff's claim as "abandoned" when plaintiff's summary judgment opposition papers made "no argument in support of [the] claim *at all*" (emphasis in original)).

Service List (via ECF)

Jon Louis Norinsberg, Esq.
Law Offices of Jon L. Norinsberg
225 Broadway, Suite 2700
New York, NY 10007
(212) 791-5396
Fax: (212) 406-6890
Email: norinsberg@aol.com

Rory Carleton McCormick, Esq.
Corporation Counsel, City of Yonkers
City Hall, 40 South Broadway
Yonkers, NY 10701
(914) 377-6256
Fax: (914)-964-0563
Email: rory.mccormick@cityofyonkers.com